190 N.J. Super. 448 (1983)
464 A.2d 300
SIMMONS COMPANY, PLAINTIFF-RESPONDENT,
v.
CITY OF LINDEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1983.
Decided June 27, 1983.
Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Nathan P. Wolf argued the cause for appellant (Skoloff & Wolfe, attorneys).
Calvin O. Trevenen argued the cause for respondent (Garippa & Trevenen, attorneys; John E. Garippa, on the brief).
PER CURIAM.
The City of Linden ("City") appeals from a judgment of the Tax Court concerning local property assessments for the years 1977 and 1978 on certain real property of respondent Simmons Company ("Simmons").
*449 The property, consisting of some 39 1/2 acres of land designated as Block 513, lots 4-1 and 4-2 and Block 514, lot 13-1, with improvements comprising respondent's mattress manufacturing center, a complex of 33 industrial buildings, "is bounded on the north by Route 278, on the east by Allen St., on the south by the Staten Island Railroad [right of way], and on the west by Park Ave., with Brunswick Ave. passing through the site in a more or less east-west line." There is also "a railroad spur [right of way] to the south connecting with the Central Railroad main stem." The buildings were constructed over the period from the early 1900's to the late 1960's and have an aggregate building area of 926,300 square feet. About 84% of the improved area is first floor space, 12% second floor space, and the remaining 4% third floor space.
The property has been used by Simmons for its mattress manufacturing business since approximately 1917, with an interruption "during World War II for the manufacture of parachutes." For each of the tax years under review, i.e., 1977 and 1978, the City assessed the property at the following values:

 Block 513, Lot 4-1 Block 513, Lot 4-2 Block 514, Lot 13-1
Land $80,000 $2,093,600 $1,040,000
Improvements -0- 4,409,800 2,230,200
 _______ __________ __________
 Total $80,000 $6,503,400 $3,270,200

On the taxpayer's appeals, these assessments were initially reviewed and sustained by the Union County Board of Taxation. The judgments of the County Board for the two years were appealed by Simmons to the Division of Tax Appeals, now the Tax Court.
The appeals were heard in the Tax Court. The proofs consisted of the testimony of two experts, Anthony J. Rinaldi for plaintiff-taxpayer and Richard M. Chaiken for the City of Linden, the written appraisal of each expert which was admitted in evidence, and the testimony of Keith Barros, maintenance *450 supervisor for the Simmons Company at the site. Plaintiff's expert testified that the subject property "is deemed to be at its highest and best use as an industrial facility." The City's expert maintained that in his opinion
... the highest and best use of this property was for a single user operation such as is being used. In the simplest form, the present use is in fact highest and best use. That is a single user who makes use of all of the property, including all of its advantages, location, its availability of process steam as a manufacturing and warehousing plant facility. That would not exclude the fact that they might not use all of the property at any given time and might rent out parts of it for short term periods when they have excess available site....
From all of the proofs it is obvious that the industrial complex at the site, used as a mattress manufacturing center, is special purpose in nature. In the circumstances, "the only proper appraisal approach for evaluating it was the cost approach." The Anaconda Co. v. Perth Amboy, 157 N.J. Super. 42, 46 (App. Div. 1978), certif. granted, 81 N.J. 55 (1979) ("limited to the issue as to whether processing tanks and related machinery and equipment are or are not business personal property, taxable under N.J.S.A. 54:11A-1, et seq."[1]). Also, as pointed out in American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978):
A significant use of the cost approach is in the valuation of public buildings or certain types of special-use properties for which rental or sales market data is limited. The principal difficulties in the approach arise in estimating viable construction cost figures and in reducing accrued depreciation from physical, functional, and economic causes to a dollar estimate, particularly for older properties. [Id. at 264 (emphasis supplied).]
While such "difficulties" do exist, see The Anaconda Co. v. Perth Amboy, supra, 157 N.J. Super. at 51, they are by no means insurmountable. In Anaconda, the subject property consisted of some 53 acres of land with improvements comprising Anaconda's Perth Amboy plant, an electrolytic copper refinery. "The various improvements on the property were constructed over the period from 1898 to 1953, with most being erected around the *451 turn of the century." Id. at 44. There, as here, the industrial complex being "special purpose in nature ... the only proper appraisal approach for evaluating it was the cost approach." Id. at 46.
Contrary to the applicable valuation principles which we detailed in Anaconda, the Tax Court judge who heard this matter found "the highest and best use of the subject property on the relevant assessing dates to be a multi-tenanted industrial facility [and] that the economic approach is the most appropriate method for valuing" it. He accordingly rejected both the cost approach and the market data approach and, without any required findings and expression of reasoning applied thereto, see Van Realty Inc. v. Passaic, 117 N.J. Super. 425 (App.Div. 1971), he offered an entirely unsubstantiated conclusion "that the economic rent for the subject property for both tax years under review was $1.39 per square foot on a gross lease basis," and proceeded to construct thereon an aggregate true value of the property of $8,515,200 for 1977 and $8,738,500 for 1978. In his letter opinion, he noted that he had dismissed "plaintiff's discrimination claim for 1977 for failure of proof," and then went on to grant, in regard to the 1978 assessments, discrimination relief under N.J.S.A. 54:2-40.4, applying to his estimates of value for that year "[t]he average ratio for the [City] for 1978 [of] 82%". He then directed the entry of judgment fixing the assessments as follows:

 For 1977
 Block 513-Lot 4-1 Block 513-Lot 4-2 Block 514-Lot 13-1
Land $69,100 $1,798,500 $ 898,600
Improvements -0- 3,821,800 1,927,200
 _______ __________ __________
 Total $69,100 $5,620,300 $2,825,800
*452 For 1978
 Block 513-Lot 4-1 Block 513-Lot 4-2 Block 514-Lot 13-1
Land $58,400 $1,528,300 $ 755,100
Improvements -0- 3,219,200 1,604,600
 _______ __________ __________
 Total $58,400 $4,747,500 $2,359,700

Such judgment was entered and this appeal by the City followed.
The projected valuations submitted by plaintiff's expert in the Tax Court were tendered on the cost, market data and income approaches. His cost approach yielded a valuation of $5,252,000; his market data approach, a valuation of $5,095,000; and his income approach, a valuation of $4,900.00. In his April 28, 1980 "Appraisal Update" to plaintiff, Rinaldi concluded in part:
With regard to the three approaches to value (Cost, Income and Market) not any one of them can be relied on solely, due to the age, condition, size and configuration of the subject. It is, therefore, necessary to do all three approaches. The most reliable and the most relevant, however, is the Market Approach, strongly supported by the Income Approach and then the Cost Approach.
The City's expert utilized the cost and income approaches, his cost approach yielding a valuation of $10,785,800 and his income approach a valuation of $10,709,700.
In light of the record before us, it is apparent that the determinations of the Tax Court, made in disregard of the special purpose nature of the subject industrial complex and well settled principles of appraisal applicable thereto, cannot stand. We therefore reverse the judgment under review and remand the matter to the Tax Court for a new plenary hearing and determinations. The issues to be addressed by the proofs and the court's determinations shall be: (1) the true value of the property for each of the tax years 1977 and 1978; and (2) plaintiff's claim of entitlement to discrimination relief for the tax year 1978. The court's determinations are to be made in accord with well settled applicable appraisal techniques, see The Appraisal of Real Estate, supra; The Anaconda Co. v. Perth Amboy, supra, and are to be grounded on detailed findings of *453 fact and expression of the reasoning which, applied to the facts so found, led to such determinations.
Reversed and remanded for proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] As to this single issue, judgment vacated and case "remanded to the Division of Tax Appeals for further consideration in light of City of Bayonne v. Port Jersey Corporation, 79 N.J. 367 (1979)."