610 A.2d 1

**F & M SCHAEFFER BREWING COMPANY:**
**c/o Stroh Brewing Company, Appellant,**

**v.**

**LEHIGH COUNTY BOARD OF APPEALS**
**and County of Lehigh, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1992.

Decided May 18, 1992.

452

John E. Garippa, Seth I. Davenport, Montclair, N.J., for appellant.

Anthony R. Thompson, Allentown, (for amicus curiae Pennsylvania Chamber of Business and Industry and Institute of Property Taxation).

Al Hettinger, Frank J. Madey, Allentown, William E. Schantz, Sol. for Upper Macungie, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

LARSEN, Justice.

Appellant F & M Schaeffer Brewing Company, c/o Stroh Brewing Company appeals from the order of the Commonwealth Court affirming the denial of appellant's tax assessment appeal by the Lehigh County Court of Common Pleas, which determined that appellant's property had a fair market value of $34 million for the years 1984–1988 and that the property's assessed value was $8,432,000 for 1984; $8,058,000 for 1985; $7,548,000 for 1986; $6,936,000 for 1987; and $6,120,000 for 1988.

The trial court described the subject property as follows:

The subject property involved is a 791,382 square foot facility situated on 62.243 acres of land located on the south side of U.S. Route 22 and on the west side of Pennsylvania Route 100 in Upper Macungie Township.

In 1971 a brewery was built on the land by the F & M Schaeffer Brewing Co. and subsequently in 1981, the property was acquired by the Stroh Brewing Co. The bulk of the building area is contained in one large, irregularly shaped manufacturing office and warehouse plant. In addition there are numerous small special purpose buildings located on the southwest side of the main plant.

The plant was built by F & M Schaeffer specifically to produce beer. At the northwest end of the main plant are the tall six story brew houses. In 1982 a new brew house was added to accommodate the special fire brewing process for the production of Stroh's beer. Adjacent to the brew houses are the large silos which contain the grains used in the production of beer. Behind the silos is an interior rail shed which allows grains to be pumped from railroad cars into the silo storage area. Once the beer is brewed it is pumped into fermenter cellars adjacent to the rail shed and eventually it is stored in large storage cellars.

In the middle of the building is a 2 story office section. The office building contains the Stroh House which is a room for entertaining visitors. From the office section there is a visitors walkway for tours of the plant.

The rear portion of the plant is used for packaging and warehousing. Within this area there are elaborate packaging systems for bottling and canning the various beer products. Within the large warehouse there are three sections for keg washing, full keg storage and empty keg storage. In 1976 an addition was made to the warehouse to increase storage capacity. Outside the main building are various small support buildings which include additional warehouses, a garage, a waste recovery building a waste pre-treatment facility, a water recirculation building and a security building. The subject facility, with its attendant equipment, is capable of producing 3,500,000 barrels of beer annually.

Opinion of the Trial Court at pp. 2–3.

The subject property was assessed at a fair market value of $34 million in 1984. Appellant appealed the assessment

to the Lehigh County Board of Assessment Appeals, which denied the appeal. Appellant then sought *de novo* review by the Court of Common Pleas. Thereafter, the County of Lehigh intervened.

Before the Court of Common Pleas, the parties stipulated to the applicable common level ratios [1] and presented expert testimony regarding the valuation of the subject property. Appellees' experts testified that the property's fair market value was $34 million. In arriving at this figure, appellees' experts testified that they first determined that the property's highest and best use was a "special purpose" brewery and then applied a replacement cost valuation approach based specifically on the amount of beer produced at the facility. Appellant's expert, on the other hand, testified that the fair market value was $9.5 million based on a comparable sales valuation approach. After hearing all of the evidence, the trial court rejected appellant's expert testimony and concluded that the property's fair market value was $34 million. The Commonwealth Court affirmed. We granted appellant's petition for allowance of appeal and now reverse.

Appellant contends that the assessment does not reflect the fair market value of the property because the valuation methodology relied on by the trial court impermissibly employed a value-in-use standard to arrive at fair market value. Specifically, appellant claims that appellees' experts erroneously considered the value-in-use of the subject property by first estimating the property's highest and best use (ie ... a brewery) and then applying a replacement cost approach based on the utility of the property for that use (ie ... the production of 3.5 million barrels of beer per year).

█ Real estate is required to be assessed according to the "actual value thereof." 72 P.S. § 5020–402. The legislature has mandated that, in determining actual value, three approaches to valuation be used, namely, 1) cost (reproduction or replacement, as applicable, less depreciation and all

1. The applicable common level ratios were: 24.8% for 1984; 23.7% for 1985; 22.2% for 1986; 20.4% for 1987; and 18% for 1988.

forms of obsolescence), 2) comparable sales and 3) income approaches, and all three must be considered in conjunction with one another. 72 P.S. §§ 5020–402, 5348(d). The term "actual value" is defined as market value or fair market value, which in turn are defined as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Buhl Foundation v. Board of Property Assessment,* 407 Pa. 567, 570, 180 A.2d 900, 902 (1962). "The actual or fair market value, while not easily ascertained, is fixed by the opinions of competent witnesses as to what the property is worth on the market at a fair sale." *Id.; Algon Realty Co. Tax Assessment Appeal,* 329 Pa. 321, 323, 198 A. 49, 50 (1938).

█ In contrast, use value or value-in-use represents the value to a specific user and, hence, does not represent fair market value. Authorities in the field of real estate valuation distinguish between market value (or value-in-exchange) and use value:

> Use value is a concept based on the productivity of an economic good. Use value is the value a specific property has for a specific use.... Use value may vary, depending on the management of the property and external conditions such as changes in the business.... Real property may have a use value and a market value.

*The Appraisal of Real Estate,* American Institute of Real Estate Appraisers, (9th ed., Chicago, 1987), cited in Appellant's Brief at p. 14. "Strictly speaking, value-in-use does not fit the criteria discussed in the definition of market value above [willing buyer/willing seller] and should not be considered equivalent to or a substitution for market value." *Industrial Real Estate,* Society of Industrial Realtors, (4th ed., Washington D.C., 1984), cited in Appellant's Brief at p. 14.

█ Because value-in-use is based on the use of the property and the value of that use to the current user, it may result in a higher value than the value in the market-

place. Value-in-use, therefore, is *not* a reflection of fair market value and is not relevant in tax assessment cases because only the fair market value (or value-in-exchange) is relevant in tax assessment cases.[2] *See McGraw–Edison Company v. Washington County Board of Assessment Appeals*, 132 Pa.Cmwlth. 437, 443, 573 A.2d 248, 251 (1990); *Pittsburgh–Des Moines Steel Co., Inc. v. McLaughlin*, 77 Pa.Cmwlth. 565, 466 A.2d 1092 (1983). Thus, we hold that a property's use and its resulting value-in-use cannot be considered in assessing the fair market value of property for tax assessment purposes in Pennsylvania.

■ Despite this Commonwealth's historical aversion to the consideration of value-in-use in property tax assessment cases, appellees contend, and the courts below agreed, that the legislature's inclusion of the cost valuation approach in the tax assessment statutes made value-in-use relevant. The Commonwealth Court, opined that:

... before the legislature approved the cost approach, only a property's value-in-exchange [fair market value] was relevant in tax assessment cases. *Pittsburgh–Des Moines Steel.* However, a cost approach now has probative value in fixing property value for tax assessment purposes. *Reichard–Coulston [Inc., v. Revenue Appeals Board of Northampton County*, 102 Pa.Cmwlth. 227, 517 A.2d 1372 (1986)]. Under a cost approach, when the highest and best use of the property is continuing the

---

**2.** We note that, while value-in-use cannot be considered in tax assessment cases, it must be considered in condemnation cases because the Eminent Domain Code specifically defines fair market value so as to encompass value-in-use principles. Section 1–603 of the Eminent Domain Code provides:

Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:

(1) The present use of the property and its value for such use.

(2) The highest and best reasonably available use of the property and its value for such use.

(3) The machinery, equipment and fixtures forming part of the real estate taken.

(4) Other factors as to which evidence may be offered as provided by Article VII.

26 P.S. § 1–603.

property's existing use, the property's value to the current user logically is relevant to determine the reproduction or the replacement cost of the facility.

\* \* \* \* \* \*

Although the trial court rejected the value-in-use method, it implicitly applied value-in-use analysis to determine the brewery's replacement cost, as required under *Reichard–Coulston.* Because the trial court correctly determined the property's fair market value by using that cost approach, we conclude that the trial court committed no error. . . .

*F & M Schaeffer Brewing Co. v. Lehigh County Board of Appeals,* 133 Pa.Cmwlth. 197, 203, 204, 575 A.2d 649, 652, 653 (1990).

■ The courts below ignored the fact that real estate is still required to be assessed according to its fair market value, which by definition precludes consideration of value-in-use. The mere fact that the legislature mandated consideration of all three approaches to valuation does not mean that value-in-use is now relevant in tax assessment cases. The cost valuation approach must be employed in such a manner that a property's use and resulting value-in-use are not considered.

Therein lies the problem with the assessment in this case. In their determination of fair market value, appellees' experts improperly utilized a replacement cost approach contingent upon the subject property's use as a brewery and the value of the property for that use (ie . . . the production of 3.5 million barrels of beer annually). The experts first calculated the cost to replace the existing facility, including machinery and equipment. They did this by applying an industry standard of $50 per barrel of beer, which they lowered to $48 per barrel. Then, in order to factor out the machinery and equipment, they estimated a one-third real estate to two-thirds machinery and equipment ratio, which left them with a figure of $16 per barrel of beer. They multiplied the $16 figure by 3.5 million barrels of beer, subtracted depreciation and added the cost of the land to

arrive at their estimated fair market value of $34 million. Appellees' experts never considered the size, shape or materials of their replacement model. Their valuation assessment simply replaced the existing facility with something of equivalent functional utility.

Thus, appellees' experts postulated a hypothetical model production plant with the only similarity to the subject property being its 3.5 million barrel per year capacity. They did so without any pretense of replicating the same physical characteristics of the actual real estate being assessed because their only aim was to value the property based on its use. The statutory language that sanctions the cost valuation approach does not permit a determination of fair market value that derives from a methodology that estimates the cost of a hypothetical, unspecific model that could vary completely in size, design and construction from that of the subject property. This misguided application of the cost valuation approach is clearly impermissible. The objective of a cost valuation approach is to estimate, as closely as possible, the cost to construct new the existing taxable real estate because that is, after all, the subject of the assessment—not the production process or use of the property.[3]

Appellees, nonetheless, defend their valuation methodology because they claim the property falls into the "special purpose" property category, where valuation ac-

3. Although other permissible cost valuation approaches were available, appellees' experts chose to ignore them. Appellees' experts did not consider the reproduction cost valuation approach, which estimates the cost to construct, at current prices, an exact replica of the property being appraised. Appellant's expert estimated the fair market value of the property using the reproduction cost approach to be $10.6 million. Additionally, appellees' experts disregarded two conventional methods of determining replacement cost valuation that do not consider the property's use. The first method, the unit-in-place method, is based upon cost estimates for major components of the property, and the second method, the engineering method, is based upon a very detailed breakdown of material and labor, with each item costed separately. All three methods, if considered, would have estimated the fair market value of the subject property without considering the property's value-in-use.

cording to use is the only proper method of valuation. The trial court defined "special purpose" property as:

"... property that is treated in the market as adapted to or designed and built for a special purpose. This definition combines both functional and structural aspects. A special purpose property becomes such either by its use for unique functions or by its distinctive specially designed structural details. The tax treatment of special purpose property is atypical and follows directly from this definition. Because the building is specially adapted to a unique use and will not readily be sold to another user, 'the very nature of special purpose property is such that market value cannot readily be determined by the existence of an actual market and therefore other methods of valuation such as reproduction cost must be resorted to.'" *McCannel v. County of Hennepin*, 301 N.W.2d 910, 924 (Minn.1980); *Federal Reserve Bank of Minneapolis v. State*, 313 N.W.2d 619 (Minn.1981); See also *Simmons Co. v. City of Linden, supra* [190 N.J.Super. 448], 464 A.2d 300 [ (1983) ].

Opinion of the Trial Court at pp. 12–13. Thus the trial court is saying that an appraiser can disregard, as nonprobative, evidence of comparable sales and value a property exclusively by a cost valuation method—simply by labeling a property as "special purpose."[4] Such a disregard for the cost, comparable sales and income approaches, is prohibited by 72 P.S. § 5020–402 and § 5348(d), both of which require that all three valuation approaches be considered. Moreover, valuation of property utilizing the "special purpose" property principle amounts to valuation according to value-in-use, which we have held to be an improper consideration in property tax assessment cases. Consideration of value-in-use is no more relevant under the guise of "special

4. Especially troubling here is the expansive definition of "special purpose" property adopted by the trial court. Because almost all industrial real estate properties exhibit some peculiarities of design and use specific to the user's particular manufacturing processes, this broad definition could easily apply to most industrial properties, leaving ample room for abuse.

purpose" property than it is for any other property. It is an unacceptable consideration in property tax assessment cases under all circumstances.[5]

Appellant further argues that appellees' assessment is erroneous because inherent in its valuation methodology is the consideration of the subject property's machinery and equipment, which cannot legally be considered in tax assessment cases. Section 201 of the General County Assessment Law provides, in pertinent part, that:

> ... Machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment shall not be considered or included as a part of the real estate in determining the value of such mill, mine, manufactory or industrial establishment....

72 P.S. § 5020–201(a).[6] Under this machinery and equipment exclusion, the traditional Pennsylvania law of fixtures and the assembled industrial plant doctrine do not apply when defining real estate for tax assessment purposes. *Jones and Laughlin Tax Assessment Case*, 405 Pa. 421, 175 A.2d 856 (1961). Thus, in the context of property tax assessment law, not only are machinery and equipment to be excluded from the value of the real estate but they are not even to be considered in determining the fair market value of industrial property for tax assessment purposes.

Appellees' experts, in the case herein, valued the subject property based on its production, and in doing so, they considered the property's machinery and equipment. Their analysis presupposes that the property will be sold as an ongoing brewery, which necessitates the use of the machinery and equipment, which are involved in the production of beer.

5. We emphasize, however, that our holding that value-in-use is not relevant in property tax assessment cases does not preclude a tax that assesses business use or privilege.

6. Once again, we must distinguish between property tax assessment cases and condemnation cases, where the "machinery, equipment and fixtures forming part of the real estate taken" must be taken into consideration when determining fair market value. 26 P.S. § 1–603(3).

Appellees maintain that while the initial per barrel figure included the cost of the subject property's machinery and equipment, its experts eventually excluded the cost of the machinery and equipment by factoring out two-thirds of its $48 per barrel figure attributable to machinery and equipment. It is not enough, however, to exclude an arbitrary amount for machinery and equipment. By valuing the subject property based on its productive capacity appellees' experts indirectly *considered* the machinery and equipment. Section 5020–201(a) specifically states that machinery and equipment "shall not be considered or included as a part of the real estate...." The machinery and equipment exclusion clearly evidences a legislative intent and public policy to promote a favorable business climate in Pennsylvania by providing tax relief for Pennsylvania industries. *See Jones and Laughlin Tax Assessment Case* at 429, 175 A.2d at 860. In view of this public policy consideration, it is not sufficient only to exclude machinery and equipment from direct inclusion in the assessable real estate valuation. To give the exclusion proper effect, the assessed value of industrial real estate must not, in any way, reflect consideration of the value of the machinery and equipment. Otherwise, a subtle—but no less real—assessment of machinery and equipment will result.

Therefore, because the valuation adopted by the lower courts is based solely on evidence of improper considerations of value-in-use and machinery and equipment, the assessed valuation of $34 million cannot stand. *See Buhl Foundation v. Board of Property Assessment*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

NIX, C.J., and FLAHERTY, ZAPPALA and CAPPY, JJ., concur in the result.