**ALLEGHENY ENERGY SUPPLY COMPANY, LLC**

v.

**GREENE COUNTY BOARD OF ASSESSMENT APPEALS, Appellant.**

**Allegheny Energy Supply Company, LLC et. al.,**

v.

**County of Greene, Board of Assessment Appeals.**

**Appeal of Southeastern Greene School District.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2003.

Decided Dec. 9, 2003.

As Amended Jan. 7, 2004.

Lee V. Price, Pittsburgh, for appellant, Southeastern Greene School District.

David C. Hook, Waynesburg, for appellee, Greene County Board of Assessment Appeals.

Carleton O. Strouss, Harrisburg, for appellee, Allegheny Energy Supply Co.

BEFORE: McGINLEY, J., SIMPSON, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Greene County Board of Assessment Appeals (Board) and the Southeastern Greene School District (District) appeal from an order of the Court of Common Pleas of the 13th Judicial District, Greene County (trial court) which determined that smoke stacks, cooling towers and a water intake structure located on land owned by Allegheny Energy Supply Co. (Allegheny) are excluded from real estate taxation under Section 201 of the Fourth to Eighth Class County Assessment Law (Law).[1] Board and District also appeal the trial court's order determining that there is 35% obsolescence for the taxable improvements. We affirm.

This case concerns the local tax assessment of property owned by Allegheny and used as an electric power plant. In July 1999, the District sought an increase in the parcel's assessed value for the 2000 tax year. The Board conducted a hearing and thereafter increased the total assessed value of the land and improvements.

Allegheny appealed to the trial court which conducted a hearing and determined the assessment and fair market value. All parties thereafter appealed to this court which issued its decision on December 10, 2001, *Allegheny Energy Supply Company v. County of Greene*, 788 A.2d 1085 (Pa. Cmwlth.2001) wherein we affirmed in part

and remanded in part. We remanded the case to the trial court for the taking of additional evidence to determine whether smoke stacks, cooling towers and water intake facility should be excluded from taxation under the machinery and equipment exclusion set forth in Section 201(a) of the Law, 72 P.S. § 5453.201. Also, this court determined that the trial court erred in failing to consider a reduction in the value of improvements for obsolescence.

■ As instructed, the trial court conducted a hearing at which time all parties again presented testimony. The trial court determined that the smokestacks, cooling towers and water intake facility are used directly in the generation of electricity, are an integral part of the industrial process of making electricity and were constructed and used for the sole purpose of generating electricity. As such, the trial court found that the smokestacks, cooling towers and water intake facility were excluded from taxation under the machinery and equipment exclusion found in Section 201(a) of the Law, 72 P.S. § 5453.201(a). The trial court also determined that improvements to the property were 35% obsolete. This appeal followed.[2]

■ The first issue we will address is whether the smokestacks, cooling towers and water intake facility constitute machinery and are therefore exempt from taxation.

Section 201(a) of the Law, 72 P.S. § 5453.201 provides:

Machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment shall not be considered or included as a

1. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.201.

2. Our review is limited to determining whether the trial court committed an error of law or abused its discretion. *Harrisburg Park Apartments, Inc. Appeal*, 88 Pa.Cmwlth. 410, 489 A.2d 996 (1985).

part of the real estate in determining the value of such mill, mine, manufactory or industrial establishment.

With respect to the smoke stacks, the trial court determined that they are approximately 700 feet high, stand on their own foundation and are connected to the combustion chambers by ductwork. The smokestacks serve to eject some of the heat from the system, disburse flue gasses into the atmosphere in a manner that minimizes environmental impact and that the smokestacks also assist the boiler fans by providing lift to speed the combustion gasses through the broiler.

The circulating water system which includes the cooling towers and water intake structure is necessary for the power plant because a condenser operating at the lowest practical temperature results in maximum work from the turbines and therefore maximum plant electrical output. The cooling towers cool large volumes of water by evaporation and by heating the surrounding air. The water intake structure is used for the circulating water system. It forms a hydronamic channel that guides the water flow out of the river and into the pumps through specialized equipment housed in the structure which removes trash and debris from the incoming water.

The trial court determined that the smoke stacks, cooling towers and water intake structure are items of machinery and equipment that are integral to, necessary for and used in the thermal cycle by which electricity is produced. Without the smoke stacks cooling towers and water intake structure, the facility cannot generate electricity. Thus, the items qualify for the machinery and equipment exclusion and are not taxable.

In making this determination, the trial court looked to *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A.2d 856 (1961), which anticipated a three

part test set forth in *U.S. Steel v. Board of Assessment and Revision of Taxes of Bucks County,* 422 Pa. 463, 223 A.2d 92 (1966) to determine whether the machinery and equipment exclusion applies. Specifically, improvements which (1) are directly used to manufacture the product, (2) are a necessary and integral part of the manufacturing process and (3) are used solely for effectuating that purpose are excluded from real estate assessment and taxation. *Id.,* 422 Pa. at 467–68, 223 A.2d at 95. Thus, quenching towers which are an absolutely necessary part of the process of making coke, are machinery. However, a storage facility which is not necessary to the making of coke is not machinery and therefore taxable. *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A.2d 856 (1961). This is so, because improvements which benefit the land generally and which may serve various users of the land are not integral parts of the manufacturing process. In *BFC Hardwoods, Inc. v. Board of Assessment Appeals of Crawford County,* 565 Pa. 65, 771 A.2d 759 (2001) a taxpayer questioned the assessment of kilns used to dry lumber for commercial purposes. The Court determined that "the kilns, including the specialized physical structure, the chamber, and the associated components, are necessary and integral, functional parts of the industrial process." *Id.,* 565 Pa. at 78, 771 A.2d at 767.

Here, the Board and District argue that the smoke stacks, cooling tower and water intake structure are adaptable to various uses and therefore benefit the land generally and are thus taxable. Board and District maintain that evidence produced in the trial court shows that the improvements which are presently being used to generate electricity, could also be adapted for other industrial uses. Namely, primary metal industries such as aluminum

or silicon could use the smokestacks as an emission point for fumes. The water intake facility could serve a municipal water system or agricultural irrigation and the cooling towers could be utilized by chemical plants with large thermal input requirements.

We agree with Allegheny and the trial court, however, that the improvements at issue are integral to the generation of electricity and are used solely for the purpose of generating electricity. Indeed, District concedes that these improvements "are necessary and integral to the manufacturing process". (District's brief at 3.) Although District argues that the improvements are nonetheless taxable because they can hypothetically support a different manufacturing or industrial process, the test is whether the machinery and equipment is integral to and necessary for and are used solely for the generation of electricity and not whether the improvements can somehow be adapted in the future for a different user.

Next, we will address whether the trial court erred in determining that the taxable improvements to the real estate suffer from obsolescence.

■ In valuing the property, the trial court viewed it as general industrial property. The trial court observed that although the property is presently being used as a power plant, for assessment purposes, the value of the property for a specific use (power plant) and the value of that use to the current owner are not relevant in determining fair market value. *F & M Schaeffer Brewing Co. v. Lehigh County,* 530 Pa. 451, 610 A.2d 1 (1992). Recently, in another assessment case involving a nuclear powered electric generated facility, this court again reiterated that the value of the property for a specific use and the value of that use to its owner are not relevant in determining fair value. *In re PP&L Appeal,* —— A.2d ——, 2003 WL 22433588 (No. 1442 C.D.2002, filed October 28, 2003). As such, the trial court reasoned that there is no such thing, for assessment purposes, as power plant property. If this principle obtains with the land, it also obtains for the taxable improvements to the land. The trial court observed that should a party purchase the property, they would not be able to use all of the structural improvements on the parcel with the same efficiency and utility as the current owner. Because there would be a loss of function and efficiency, the structures would to some extent become obsolete.

As to obsolescence, an expert for Allegheny testified that as a general industrial property, the buildings and structures are 35% obsolete. Experts for District and Board maintained that the property must be viewed as a power plant and that all improvements are ideally suited for the production of electrical power into the foreseeable future and that there is no obsolescence whatsoever.

The trial court determined that because the value of property for a specific use, such as electricity, is not relevant to a determination of fair market value for assessment purposes, and because experts for Board and District viewed the property for taxable purposes as a specific use, i.e., electric production, and determined that there was no obsolescence, their arguments were based on a flawed premise and he therefore rejected their testimony. The trial court accepted the testimony of Allegheny's expert who concluded that the improvements were 35% obsolete.

Board and District argue that contrary to the trial court's reasoning, Pennsylvania law permits consideration of a property's highest and best use when reaching a fair market value. Here, the highest and best use is that of a power plant. Board and

District maintain that there is a difference between value-in use, which is defined as a property's value to the current user and is prohibited in determining fair market value in tax assessment appeals, *F & M Schaeffer Brewing*, and fair market value.

■■ Fair market value is estimated by considering the cost approach, income approach and market (or sales comparison) approach to value, Section 602 of the Law, 72 P.S. § 5453.602. Here, all experts reconciled the value using the cost approach, which requires a determination of land and improvement value. The land value is not an issue but the improvement value is. Under the fair market value approach, consideration of the property's use as a power plant is proper. Fair market value is the price that a purchaser, willing but not obligated to buy, would pay a seller, willing but not obligated to sell, taking into consideration not only the present use of the property but all of the uses including the highest and most profitable use to which the land is available and adaptable. *Mack Trucks, Inc., v, Lehigh County Board of Assessment Appeals,* 692 A.2d 661 (Pa.Cmwlth.1997). Here, all experts agreed that the property is and would be used in the future as a power plant and the property's continued use as a power plant is appropriately considered when valuing the property and determining whether obsolescence applies. In *McGraw–Edison Co. v. Washington County Board of Assessment Appeals,* 132 Pa.Cmwlth. 437, 573 A.2d 248 (1990), this court determined that the taxpayer failed to establish that the taxing authority's expert utilized the impermissible value-in-use approach to valuation. The expert there testified that he considered the property's continued use of the manufacturing facility in valuing the property. Because the expert did not base his opinion of value solely upon its value to the current user, this court determined

that the value-in-use principles were not violated. In this case, like *McGraw–Edison,* Board's and District's experts valued the property through an analysis of the market, not simply on its value to Allegheny and therefore the prohibition of valuing the property based on the value-in-use method was not violated.

Based on their determination that the subject property is and will continue to be used as a power plant in the foreseeable future, experts for Board and District determined that there is no obsolescence. Functional obsolescence is defined as loss in value due to lack of utility or desirability on part or all of the property. Here, improvements to the power plant are continually maintained and upgraded and there is an economic demand for its continued use as a power plant in the future. A willing purchaser would buy the property as a power plant and to apply functional obsolescence factors based on the assumption that the plant would be used in an alternate fashion, such as a warehouse, ignores the facts and understates the value of the property.

■ Allegheny maintains and we agree that the trial court properly refused to consider the current use of the property as a power plant in accordance with this court's decision ordering the remand wherein we stated:

> We repeat, the value of the property for a specific use and the value of that use to the current owner are not relevant in determining fair market value. *F & M Schaeffer,* [530 Pa. 451, 610 A.2d 1 (1992)]. Furthermore, the Taxpayer's expert clearly considered the power plant and general industrial uses to be interchangeable. To the extent that the trial court considered otherwise it was mistaken.

*Allegheny,* 788 A.2d at 1092. Thus, on remand the trial court properly accepted

the testimony of Allegheny's expert, who viewed the property as an industrial use, presently functioning as a power plant, and excluded the value of the machinery and equipment and the plant's productivity for generating electricity.

Allegheny also points to the following language in *Allegheny,* wherein we stated:

> The Taxpayers argue that the court erred when it disallowed a cost reduction for obsolescence because depreciation comprises obsolescence, which exists regardless of the property's highest and best use. Furthermore, they argue, Section 602(a) of the law requires a reduction for obsolescence when using the cost method of valuation. We agree.

*Allegheny,* 788 A.2d at 1092–93. Here, the trial court accepted the obsolescence factor of 35% as proffered by Allegheny's expert. The expert explained that functional obsolescence was primarily due to the very specific purpose for which the buildings were constructed. Specifically, the buildings do not lend well to alterations or adaptive use. Also, the framing would not survive the removal of equipment and therefore the buildings have little or no marketability. As to economic obsolescence, Allegheny's expert testified that there is no level of demand for development of industrial operations at this site. If the plant were placed on the market as an industrial site, it would suffer a significant loss in value because of its location which is away form the urban centers of the state.

■ The trial court also accepted the testimony of Allegheny's expert that the docking pillars or mooring cells also suffer from obsolescence. The pillars themselves are circular structures with flat tops and stand on bedrock below the river bottom and protrude approximately 25 feet above the river ledge. Because there is an over supply of docking facilities in the area, the trial court applied a 39% obsolescence figure. Again, we observe that the trial court properly relied on the testimony of Allegheny's expert in applying an obsolescence factor inasmuch as this court in our decision in *Allegheny Energy Supply Company* stated that a reduction for obsolescence is proper when using the cost method of valuation. The trial court did not, therefore, commit an error of law or abuse its discretion.

In accordance with the above, the order of the trial court is affirmed.

### *ORDER*

Now, December 9, 2003 the orders of the Court of Common Pleas of the 13th Judicial District, Greene County in the above captioned matter are affirmed.