ALLEGHENY ENERGY SUPPLY COMPANY, LLC, and Monongahela Power Co., from the action of The Greene County Board of Assessment Appeals with Regard to Tax Parcel Numbers 16–01–54–A and 16–01–165–C

v.

COUNTY OF GREENE, BOARD OF ASSESSMENT APPEALS,
Appellant.

Allegheny Energy Supply Company, LLC, and Monongahela Power Co., from the action of The Greene County Board of Assessment Appeals with Regard to Tax Parcel Numbers 16–01–54–A and 16–01–165–C

v.

County of Greene, Board of Assessment Appeals, Monongahela Township and Southeastern Greene School District

Appeal of: County of Greene, Board of Assessment Appeals.

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2005.
Decided Feb. 23, 2005.

See also 788 A.2d 1085; 837 A.2d 665.

David C. Hook, Waynesburg, for appellant.

Carleton O. Strouss, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, and LEADBETTER, Judge.

OPINION BY President Judge COLINS.

The Board of Assessment Appeals of Greene County appeals the order of the Court of Common Pleas of Greene County fixing the value of the Hatfield Ferry Power Station and related landfill site for the 2002, 2003, and 2004 tax years.

The valuation of these parcels first came before this Court on appeal from the trial court in *Allegheny Energy Supply Company v. County of Greene,* 788 A.2d 1085 (Pa.Cmwlth.2001) (*Allegheny Energy I*), wherein we essentially affirmed the trial court's valuation with the exception of its disallowance of a reduction in value of the property's improvements for obsolescence and remanded for a determination of the taxability of the power plant's smokestacks, cooling towers, and water intake structure. After remand, in *Allegheny Energy Supply Company v. Greene County Board of Assessment Appeals,* 837 A.2d 665 (Pa.Cmwlth.2003) (*Allegheny Energy II*), *petition for allowance of appeal denied,* 578 Pa. 710, 853 A.2d 363 (2004), we affirmed the trial court's determination that the power plant's smokestacks, cooling towers, and water intake facility were excluded from taxation pursuant to Section 201(a) of The Fourth to Eighth Class

County Assessment Law (Law),[1] 72 P.S. § 5453.201(a), as machinery and equipment used directly in, and for the sole purpose of, the generation of electricity, and the court's determination that the improvements to the property were 35 percent obsolete.

While the first appeal was pending, the taxing authorities raised the assessment of the parcels, and in 2002, the assessments were raised again as part of a countywide reassessment for the tax year 2003. Allegheny Energy and Monongahela Power (Taxpayers) appealed, and the appeals were consolidated for a determination of the assessments for the tax years 2002 through 2004. The trial court entered a stipulation and order, incorporating parts of the prior proceedings and the agreement of the parties that the proceedings would be governed by the prior determinations of the trial court and Commonwealth Court.

At a hearing before the trial court, the Taxpayers submitted the appraisal and expert testimony of Donald Goertel, and the taxing authorities offered the appraisal and testimony of William Bott. The Board of Assessment Appeals offered no evidence in support of its determinations. The trial court considered the cost, comparable sales, and income methods of valuation and as in the prior cases applied the cost method of valuation.

With respect to the power station parcel, the trial court adopted Mr. Bott's opinion of the value of the land after concluding that his appraisal was more geographically relevant to the parcel in question. For the valuation of the improvements, the trial court adopted Mr. Goertel's determination of the replacement cost of the site's structures and Mr. Bott's valuation of the improvements (i.e., grading paving, parking fencing, lighting, mooring cells, docking facilities, etc.). It accepted Mr. Goertel's depreciation figure for the taxable improvements and Mr. Bott's higher number for the site improvements, which he reasoned are subjected to greater wear and tear. The court accepted Mr. Goertel's estimate of 35 percent obsolescence, noting this Court's approval of that figure in *Allegheny Energy II*.

With respect to the landfill parcel, the experts offered widely differing appraisals. The trial court determined that the valuation of the landfill parcel remained unchanged after concluding that the evidence did not warrant a reconsideration of that valuation.

■■■ On appeal,[2] the Board essentially raises the following issues: 1) whether the smokestacks, water intake structures, and cooling towers are excluded from taxation as machinery and equipment; 2) whether obsolescence must be based on the continued use of the facility as a power plant; 3) whether the power plant's heater bay and control room are taxable; and 4) whether the trial court ignored the value of the gravel-paved parking lot and the site drainage system as site improvements.

■■■ As we stated in *Allegheny I*, in tax assessment appeals, actual value is determined by competent witnesses testifying as to the property's worth in the market, considering the uses to which the property is adapted and might reasonably

---

1. Act of May 21, 1943, P.L. 571, *as amended.*

2. Our review in a tax assessment appeal is narrow, such that the trial court's valuation will be affirmed unless its findings are not supported by substantial evidence or it abused its discretion or committed an error of law.

*Air Products and Chemicals, Inc. v. Board of Assessment Appeals*, 720 A.2d 790 (Pa. Cmwlth.1998). The trial court's findings are entitled to great deference, and its decision will not be disturbed absent clear error. *Id.*

be adapted. 788 A.2d at 1090 (citing *F & M Schaeffer Brewing Company v. Lehigh County*, 530 Pa. 451, 610 A.2d 1 (1992)). The trial court's duty is to weigh the conflicting expert testimony and determine a value based on credibility determinations. *Id.* The trial court has the discretion to decide which of the methods of valuation is the most appropriate and applicable to the given property. *Id.*

■ On the issue of the taxability of the smokestacks, cooling towers, and water intake structure, we agree with the Taxpayers that this issue was fully litigated in *Allegheny II*. Moreover, the parties stipulated that the present assessment appeal would be governed by the earlier decisions, "including by way of illustration and not limitation, determinations regarding the application of the machinery and equipment exclusion." (Stipulation and Order, ¶ 3.) We will not revisit this issue. As for the taxability of the heater bay and control room, the trial court, citing *Jones & Laughlin Tax Assessment Case*, 405 Pa. 421, 175 A.2d 856 (1961), concluded that their only function is to directly support the thermal cycle in which chemical energy is converted to electrical energy, making them a necessary and integral part of the manufacturing process. The trial court's conclusion is supported by the credited evidence. "[T]he test is whether the machinery and equipment [are] integral to and necessary for and are used solely for the generation of electricity. and not whether the improvements can somehow be adapted in the future for a different user." *Allegheny II*, 837 A.2d at 669.

■ On the issue of obsolescence, the Board argues that the obsolescence factors applied by the trial court are excessive and based on the fictional assumption that the power plant will not continue to be used as a power plant. We disagree. After considering the expert opinions on this issue,

the trial court rejected the Board's contention that obsolescence should be calculated by comparing the power plant with a new power plant and credited Mr. Goertel's figure of 35 percent at which he arrived after considering the site for general industrial use. This Court specifically rejected the Board's position on this issue in *Allegheny II*, citing *F & M Schaeffer Brewing* and our more recent decision in *In re PP&L, Inc.*, 838 A.2d 1 (Pa.Cmwlth. 2003). *PP&L* involved the valuation of a nuclear-powered electric generation facility, and we again ruled that when applying the cost approach to valuation, the value of the property for a specific use and the value of that use to the owner are not relevant. 838 A.2d at 11. The trial court did not err when it adopted Mr. Goertel's obsolescence determination because it considered the site as one in general industrial use.

■ Finally, the Board argues that the taxable site improvements should have included the gravel parking lots and the site drainage system. After hearing the testimony, the trial court adopted Mr. Goertel's analysis of which improvements were taxable and Mr. Bott's valuation of those site improvements:

> We therefore adopt Mr. Bott's figure for site improvements with certain adjustments. We deduct his figures for gravel paving (which seems mostly to be on the private road, which is not the subject of this proceeding.... We also deduct Mr. Bott's allocation for drainage, because this is specific to the power plant.

Trial court opinion, p. 10 (citation omitted).

The trial court's decision to eliminate the value of the drainage system and the gravel parking lots is supported by the credited evidence. Mr. Goertel testified that the drainage system has no application except to the use of the site as a

power plant and therefore adds no value to the property. (Transcript, pp. 104–105.) Mr. Goertel did not list the gravel parking lots as site improvements, his report stated that improvements including the access roads, interior cartways, and parking lots have been designed and implemented for the purpose of serving the parcel's present use (Goertel appraisal report, p. 128), and he testified generally that such elements are not reflected in the market, stating, "The market tends to eliminate all of those features from a property when it is being bought and sold." (Transcript, p. 104.)

Accordingly, the order of the trial court is affirmed.

Judge LEAVITT did not participate in this decision.

Judges PELLEGRINI and LEADBETTER concur in the result only.

### *ORDER*

AND NOW, this 23rd day of February 2005, the order of the Court of Common Pleas of Greene County in the above-captioned matter is affirmed.