## Basile v. Berks County Board of Assessment Appeals

*Mark H. Koch,* for appellant.
*William R.A. Rush,* for appellee.
*George J. Ozorowski,* for intervenor Daniel Boone Area School District.

LASH, *J.,* August 5, 2009—The appellant, Andrew G. Basile (landowner), has filed an appeal from the decision entered by the Berks County Board of Assessment Appeals, assessing residential real estate owned by landowner at $362,000, effective January 1, 2009. A de novo trial was heard on the appeal on July 28, 2009. The court enters the following findings of fact:

## I. FINDINGS OF FACT

(1) The appellant, Andrew G. Basile, is an adult individual who resides at 279 Hallman Road, Douglasville, Berks County, Pennsylvania.

(2) The appellee, Berks County Board of Assessment Appeals, is located at the Berks County Services Center, Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.

(3) Intervenor, Daniel Boone Area School District, is a school district with a principal office located at Matthew Brooke Building, Suite 200, 321 North Furnace Street, Birdsboro, Berks County, Pennsylvania 19508.

(4) Landowner is the owner of real estate approximately 2.92 acres in size, improved with a residence of approximately 4,750 square feet in size, located at 279 Hallman Road, Douglasville, Berks County, Pennsylvania. It is identified by parcel no. 88-5363-01-27-3181.

(5) The residence is in the Daniel Boone Area School District.

(6) The residence features 11 rooms, including four bedrooms and three and one-half baths. There is an attached two-car garage and a separate detached two-car garage/outbuilding. The attached two-car garage is part of the new construction. The detached building has foundational cracks, is in generally poor condition, and is used primarily for storage of outdoor maintenance equipment.

(7) The residence was originally built in 1852 with an addition in 1960. After a fire, the residence was rebuilt in 2001.

(8) About 23 percent of the square footage consists of the original farmhouse. It is constructed of two-foot wide

masonry walls, two stories in height, and is currently used for the living room area on the first floor and a recreational area on the second floor. There is a stone fireplace in the living room.

(9) The new section features a modern kitchen with a subzero built-in refrigerator, dishwasher, oven, electric cook top, granite countertops and stock wood cabinets. The guest bath and master bath have several ceramic tile shower stalls, ceramic tile floors and a jet tub. The hall bathroom has a modular tub over a shower. The flooring is wide-width hardwood, except for the three bedrooms on the second floor. There is also a rear second floor wood deck, a front slate patio/porch area and mature landscaping and trees on the property.

(10) The residence is well maintained, in good condition on both the interior and exterior.

(11) The property was assessed at $362,000 for the 2009 tax year.

(12) Landowner filed an appeal of the assessment to the board. On October 22, 2008, the board issued a notice, denying the appeal and reiterating the assessed value of the property at $362,000 for the 2009 tax year.

(13) On or about November 12, 2008, landowner filed an appeal from the board's decision to the court of common pleas.

(14) The Berks County common level ratio for tax year 2009 is .657.

## II. DISCUSSION

The issue before this court is the fair market value of the premises. Actual or market value is defined as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all issues to which the property is adapted and might in reason be applied." *F & M Schaeffer Brewing Company v. Lehigh County Board of Appeals,* 530 Pa. 451, 457, 610 A.2d 1, 3 (1992).

In support of their respective positions, each party presented testimony by an appraiser expressing an opinion of fair market value. Landowner's expert was Bruce R. Hall, a state certified general appraiser, who valued the fair market value of the property, as of October 12, 2008, to be $408,000. The board and Daniel Boone jointly retained Thomas J. Bellairs, a state certified general appraiser, who valued the property at $480,000 as of August 15, 2008.

The court's function is not to independently value the property, but to determine the value based on competent and credible evidence. *Appeal of F. W. Woolworth Company,* 426 Pa. 583, 586, 235 A.2d 793, 795 (1967). When there are conflicting experts, the court may accept all, none or part of an expert's testimony, part of one expert's testimony and part of another's. *Appeal of Avco Corporation,* 100 Pa. Commw. 616, 621, 515 A.2d 335, 338 (1986). In determining actual value, three approaches to valuation are to be used: cost (reproduction over placement, as applicable, less depreciation in all forms of obsolescence), comparable sales, and the income ap-

proach. 72 P.S. §§5020-402, 5348(d), *F & M Schaeffer Brewing Company,* 530 Pa. at 456-57, 610 A.2d at 3. In considering the weight to be given to various approaches to valuation, a trial court has discretion to determine which of the conflicting methods (cost, comparable sales or capitalized income) is the fairest and most reasonable for a particular property. *Pennypack Woods Home Ownership Association v. Board of Revision of Taxes,* 163 Pa. Commw. 80, 82, 639 A.2d 1302, 1303 (1994), *allocatur denied,* 539 Pa. 669, 652 A.2d 839 (1994).

The residence is large, approximately 4,750 square feet in size. It features a unique combination of an 1850s farmhouse, which comprises approximately 23 percent of the living space, and a new addition with many modern amenities. The house sits on 2.92 acres of land in a nice rural setting, with a view of a golf course.

The residence was constructed in phases. Initially, it consisted solely of the farmhouse, built in approximately 1852. Sometime in the 1950s or 1960s, a previous owner constructed an addition. In approximately 1999, landowner's family purchased the residence for the benefit of another relative. The family then began making improvements on the property, in essence, rebuilding the newer portion of the premises. However, sometime in 2001, a fire occurred, substantially damaging the residence. Very little was left of the new section other than the foundations.

The house remained in its damaged condition for a period of time, reconstruction being delayed due to litigation arising from the fire. Ultimately, landowner, who

is a residential developer, approached his family and purchased the property from them, to reconstruct the building and provide himself with a residence.

Landowner's improvements to the farmhouse portion consisted of laying down new flooring, and putting a new plaster facade on the walls. The newer portion had to be almost entirely reconstructed. Landowner built the new portion on the existing foundations. There were problems due to the different heights of the foundations, the limited access available from the farmhouse, as well as the nature of the foundations themselves. According to landowner, this resulted in a difficult and expensive reconstruction, amounting to a total cost for purchase of the property, labor and materials of over $500,000.

In reaching his conclusion on fair market value, landowner's appraiser relied solely on the comparable sales approach. The income approach was inapplicable, as the property was being used as a residence. The cost approach was unwieldy, based on the substantial obsolescence of the farmhouse portion and the unusual expenses associated with the difficult reconstruction.

Landowner's appraiser identified five comparable sales. The comparables were chosen primarily because they were all considered "farmhouse" properties, all featuring farmhouse type residences at least 100 years old. The comparables were all modernized and some of the comparables had additions constructed to the original farmhouse, however, none of the additions approached the approximate 3,000 square foot addition constructed by landowner for the subject property. All but one comparable was sold in 2008, the other being sold on August

30, 2007. All but one had greater acreage. Significantly, all of the residences were significantly smaller, with the largest being comparable sale no. 5 of 3,751 square feet.

Landowner's appraiser employed a quantitative analysis, making adjustments in dollar amounts to the comparables to account for the differences in the features. The estimated excess land was valued at $10,000 per acre. Additional square footage of the improvements was estimated at $10 per square foot. Other values were also set: central air at $2,000, $1,000 for each additional bathroom, $2,000 per bay for the garages, $2,000 for each additional fireplace, $10,000 for each additional barn, $20,000 for an in-ground pool, and $10,000 for an additional summer kitchen/shed/outbuilding.

After applying these adjustments, the appraiser found the adjusted sale price of each of the comparables to be roughly equivalent, from a range of $404,000 to $409,500. From these adjusted sale prices, landowner's appraiser arrived at the final estimated fair market value at $408,000.

The board/Daniel Boone's appraiser relied on both the sales comparison approach and the cost approach, also declining to use the income approach as inapplicable. As the appraiser could not locate any sales in close proximity to the subject property which featured a farmhouse with substantially new construction, and because approximately 77 percent of the subject property was newer construction, and because the "feel" of the residence was "new", the board/Daniel Boone's appraiser opined that the best available comparisons would be

made from sales of residences of relatively new construction. He determined the effective age of the subject property to be seven years.

He then identified three sales, two occurring in 2007 and one in 2008. The comparables featured residences of roughly the same square footage. Two of the properties are on substantially smaller lots.

The appraiser also made quantitative adjustments to the comparables in dollar amounts. He employed a figure of $50 per square foot for the additional square footage in the living area and $10 per square foot for the lower level, $5,000 per acre for additional acreage, and $5,000 for an additional bathroom, fireplace, or car bay in a garage.

The board/Daniel Boone's appraiser then reached adjusted sale prices for each of the comparables, and reviewed the mean and medians of the adjusted sales prices. He concluded that $480,000 was an appropriate fair market value for the premises.

On the cost approach, the board/Daniel Boone's adjuster, using fair market value figures for raw land in the area, reached a site value of $100,000. Utilizing the Marshall and Swift Residential Cost Handbook, and considering the nature of the building and renovations, he determined that the dwelling area could be constructed at a cost of $72 per square foot, totaling $342,432, the basement could be constructed at $30 per square foot, totaling $59,130, and the garage carport could be constructed at $30 per square foot, totaling $23,940. The total estimate for the construction was $425,502. He then estimated depreciation for obsolescence at $49,656, re-

sulting in a depreciated cost of the improvements at $375,846. He then added $10,000, ostensibly for the value of the detached outbuilding/garage. Adding these figures to the $100,000 site value, results in a value by the cost approach of $485,846.

In making our determination, we initially reject the cost approach. For one, the cost to reconstruct the farmhouse portion of the building would be difficult to ascertain and would require huge estimates for depreciation based on obsolescence. The estimates would be little more than guesswork. Secondly, landowner provided competent testimony that the reconstruction of the new addition was problematic, for reasons already set forth. These problems would factor into the cost of reconstruction. Additionally, the excess cost presented superadequacy issues. Superadequacy occurs when the construction exceeds basic market requirements, at an additional cost, but the excess does not contribute to fair market value in an amount equal to its cost.

Turning then to the comparable sales approach, we observe that the appraisers reached very different conclusions on the nature of the subject property, one considering the property to be a "farmhouse" to be compared with older farmhouse dwellings, with the other considering the property to be "newer construction". In fact, the subject property is a combination of both, a type of hybrid. It has some characteristics of an older building, but also has many modern amenities. In essence, landowner possesses the best and worst of both worlds.

Unfortunately, the appraisers were not able to locate similar "hybrid" properties. Their choice of comparables

were consistent with their conception of the nature of the property.

The characteristics of the property make it inequitable to find the subject property to be classified simply as a farmhouse or as newer construction. It is also inappropriate to appraise the old and new portions separately and apply a percentage mechanically, such as 23 percent/77 percent, as you might do with the cost approach, for the property must be considered as a whole, not as a combination of separate parts. Comparing a sale of one property to a portion of another property to determine fair market value of the portion of that property is improper, because fair market value addresses what a prospective buyer would purchase for the whole property, not what would be an accurate cost for a portion of same.

Turning then to a review of the comparables, we comment first on the line item adjustments. As stated, landowner's appraiser made an adjustment of $1,000 for an additional bathroom, $2,000 for an additional fireplace or an additional garage bay, and $10,000 per acre for additional acreage. The board/Daniel Boone's appraiser adjusted at $5,000 for an additional bath, $5,000 for an additional garage bay, $5,000 for an additional fireplace, and $5,000 per acre for additional acreage. The figures submitted by landowner's appraiser appear more appropriate and will be utilized.

We disagree, however, with landowner's appraiser's figure of $10 per square foot for the additional residential area. Landowner's comparables are significantly smaller in square footage, ostensibly because they are older

farmhouses. For example, comparable sale no. 1 is a property with residential area of 2,178 square feet, 2,562 square feet smaller than the subject property. Land-owner's appraiser suggests that the additional 2,562 square feet is worth only $25,500. This figure is clearly low, when you also consider that the additional square footage appearing on the subject property represents newer construction, the modern portion of the residence. Further, the additional square footage in the subject property represents the main living area, namely, the kitchen, bathrooms, and bedrooms. We accept instead a figure of $30 per square foot, representing the midpoint between landowner's figure and the board/Daniel Boone's figure of $50 per square foot. Reduction from the board/Daniel Boone's figure is warranted because that appraisal presumes the subject property to be "new-er construction," with an effective age of seven years, where in reality, nearly one-quarter of the property is much older with underutilized and less valuable square footage.

We also reject the adjustment made by landowner's appraiser for the presence of a swimming pool in two of the comparables. Generally, prospective buyers are not willing to pay a higher price for a home simply because it features a swimming pool.

We have one other major concern. The board/Daniel Boone's appraiser made no adjustment on any of his three comparables to account for the difference in condition between the newer homes represented by the compara-bles and the hybrid subject property. Thus, the problems associated with an older, obsolescent structure were not

addressed. This is best illustrated by looking at the board/ Daniel Boone's comparable no. 1, a beautiful property, approximately 11 years old, selling for $550,000, with an even larger adjusted sale price of $577,800. A downward adjustment of $40,000 or $50,000 to equalize the partial obsolescence of the subject property is probably warranted before this property can be considered a fair comparison. Any adjustment of this nature made by this court on any of these three properties, however, would be mere speculation. It appears best therefore, to decline to rely on the comparables offered by the board/Daniel Boone.

Accordingly, we will take the average of the five comparables submitted by landowner, after making the line item adjustments set forth herein. The new adjusted sale prices are $459,360 for comparable no. 1, $465,040 for comparable no. 2, $438,100 for comparable no. 3, $469,560 for comparable no. 4, and $426,670 for comparable no. 5. The average of these figures is $451,746, which we round off to $451,750. Applying the common level ratio of .657, the assessed value for tax year 2009 becomes $296,797, which we round off to $297,000.

We enter the following order:

ORDER

And now, August 5, 2009, upon consideration of the within appeal and after a de novo trial held, it is ordered that the actual market value of the property owned by appellant, Andrew G. Basile, and situate in the Daniel Boone Area School District, with an address of 279 Hall-

468

man Road, Douglasville, Berks County, Pennsylvania, parcel no. 88-5363-01-27-3181, is set at $451,750. The common level ratio for tax year 2009 being .657, the assessed value for tax year beginning January 1, 2009 for county and township taxes and beginning July 1, 2009 for school district taxes shall be rounded off to $297,000.