**HERSHEY ENTERTAINMENT AND RESORTS COMPANY**

v.

**DAUPHIN COUNTY BOARD OF ASSESSMENT APPEALS,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2005.

Decided May 18, 2005.

---

Carl G. Wass, Harrisburg, for appellant.

Helen L. Gemmill, Harrisburg, for appellee.

BEFORE: SIMPSON, J., and LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Dauphin County Board of Assessment Appeals (Board) appeals from the June 29, 2004 order of the Court of Common Pleas of Dauphin County (trial court) that determined the value of property owned by Hershey Entertainment and Resorts Company (HERCO), designated as Tax Parcel Nos. 24–009–012 and 24–009–009, when valued as a single economic unit as of the base year 2001, to be $45,200,000.00. For the reasons that follow, we affirm.

In its June 29, 2004 opinion, the trial court found the following facts. HERCO operates Hersheypark and ZooAmerica on the two parcels, which consist of approximately 210 acres located in Derry Township, Dauphin County. Although the two parcels are not contiguous in that they are divided by a public road, the parties agreed that they are utilized as a single economic unit and therefore, that they should be assessed as a single economic unit.

Parcel No. 24–009–012 consists of approximately 8.7 acres on which multiple buildings are located. In these buildings, HERCO operates ZooAmerica, which is primarily an educational and/or amusement exhibition. Hersheypark is located on Parcel No. 24–009–009, which consists of approximately 201.82 acres. Hersheypark, an amusement park, consists of

amusement rides, more than 150 buildings and paved parking areas.

In 2001, Dauphin County conducted a county-wide reassessment in order to establish new assessment values for the tax years commencing on and after January 1, 2002. HERCO appealed from the reassessment of its property to the Board, which on November 15, 2001, lowered the assessment. Despite the revisions made by the Board, HERCO timely appealed to the trial court on the grounds that the assessment was higher than the fair market value of the property and included an assessment upon certain amusement rides that were not taxable as real property.

The trial court held a two-day *de novo* hearing, which began on January 27, 2003 and concluded on February 23, 2004. As the trial court noted, it is the fact finder in a tax assessment appeal and matters of credibility and evidentiary weight are solely within its province. *In re Appeal of M.W. Kellogg Co.*, 89 Pa.Cmwlth. 320, 492 A.2d 130 (1985).

The parties agreed that inasmuch as Dauphin County has adopted a pre-determined ratio of 100% in connection with the county-wide reassessment, the only value that needed to be determined was the market value for the property for the tax years beginning on or after January 1, 2002. The Board introduced into evidence, without objection, the pertinent assessment records from the Dauphin County Tax Assessment Office (TAO), which indicated a total assessed value for the property of $86,448,700.00.

Before addressing the expert testimony presented, the trial court noted that pursuant to the Act of October 4, 2002, P.L. 873 (popularly known as Act 124), Section 201(a) of The General County Assessment Law (GCAL)[1] was amended by adding the following provision: "No amusement park rides shall be assessed or taxed as real estate regardless of whether they have become affixed to the real estate." Section 4 of Act 124 provides that the amusement ride amendment to Section 201(a) of the GCAL applies to valuations levied for the calendar or fiscal year beginning on or after January 1, 2002. Insomuch as both parties agreed that the TAO's assessment included a valuation of the amusement rides at Hersheypark, the trial court noted that the TAO's assessment had lost its presumed validity.

The parties introduced their respective appraisals of the property into evidence and presented their appraisers as expert witnesses. Both HERCO's expert, Elliot Weinstein, and the Board's expert, Egbert Langendijk, are certified real estate appraisers and members of the Appraisal Institute.

Weinstein considered all three approaches to valuation, i.e., the cost approach, the comparable sales approach and the income approach. In his opinion, Weinstein believed that only the cost approach would be applicable to the property. He stated that the comparable sales approach was inapplicable because there were no comparable sales of amusement parks upon which to develop a comparable sales approach. Weinstein also believed that the income approach was inapplicable because it was his task to establish a market value of the taxable real property, including land and improvements. He did not believe that it was his task to establish the value of the business of either Hersheypark or ZooAmerica.

Based on Weinstein's testimony and appraisal report, the trial court determined that the land component of more than 200 acres, valued at $110,000.00 per acre, yield-

---

**1.** Act of May 22, 1933, P.L. 853, *as amended,*   72 P.S. § 5020–201(a).

ed a value of $23,160,000.00.[2] With regard to the structural improvements, the trial court accepted Weinstein's value of $21,926,700.00. With regard to the non-structural improvements, the trial court accepted Weinstein's value of $2,301,100.00. Therefore, the trial court determined that Weinstein's total valuation of the property would be approximately $45,200,000.00.

Langendijk also considered all three approaches to valuation. He determined, however, that the cost approach could not readily be done because he would need an engineering breakdown of each of the improvements to the property, which would amount to a massive undertaking. Langendijk opined that the vacant land value would be $110,000.00 per acre. Langendijk did not use the comparable sales approach because he could find no data on comparable properties.

Therefore, Langendijk used the income approach. He testified that he used the net income from Hersheypark, ZooAmerica, the old Hersheypark Arena and the stadium for a period of several years. He further stated that after determining the average annual income, he factored out what he determined to be the income attributable to the business enterprise components. Langendijk determined that Hersheypark and ZooAmerica had an annual net operating income of $6,500,000.00. Based on his calculations, he arrived at a value of $53,823,000.00 as of August 1, 2002. After including similar calculations for the stadium and arena, Langendijk opined that as of August 1, 2002, the total value of the property was $56,881,000.00. His estimate of the value of the property as of August 2001 was $55,965,000.00.

Citing the Supreme Court's decision in *F & M Schaeffer Brewing Co. v. Lehigh County Bd. of Appeals,* 530 Pa. 451, 610 A.2d 1 (1992), the trial court determined that Langendijk's income-based valuation did not constitute a proper methodology for calculating the market value of taxable real estate inasmuch as it was based on "value-in-use," i.e., the value of the property to the specific property owner. In describing value-in-use, the trial court stated:

"Use value" or "value-in-use" is a concept derived from the particular property and the value of that use to its current user, which may fluctuate based upon both management and administration of the property and other external conditions. As this Court has noted in its decision in a recent tax assessment appeal case, the use of the specific income of a specific user of a property is a value-in-use concept, which is simply not permissible as a reflection of fair market value in any tax assessment case, regardless of which of the three approaches is used. The Board's expert's testimony starts with, and is based upon, the number of turns of the turnstile as patrons enter the amusement part [sic], the zoo, the arena or the stadium; a starting point no different from that which was rejected in *F & M Schaeffer Brewing Company,* where the appraiser began his analysis by determining the number of barrels of beer produced by the facility under examination.

Trial Court's Opinion at 8; R.R. 974a (citation omitted).

In addition, the trial court determined that Langendijk's methodology was not the usual approach to income-based valuation, which is primarily used for rental

---

2. The trial court noted that although Weinstein had initially opined that the value of the property was $95,800.00 per acre, he essentially conceded during his testimony that the actual value of the land was $110,000.00 per acre. *See* Trial Court's Opinion at 5, 9–10; R.R. 971a, 975a–976a.

properties such as apartments, office space and shopping centers. That approach generally begins with a determination of the available square footage and is based on the premise that the space available for leasing has a potential for producing income by the simple act of permitting a third party to occupy it for a period of time. The trial court noted that the usual income approach is a far cry from Langendijk's complex income-based analysis, "which starts with an examination of revenues derived from a complex combination of real and personal property, tangible assets, good will, advertising, marketing, management and other factors which go into the day-to-day operation of a complex business...." *Id.* at 9; R.R. 975a.

Having accepted Weinstein's valuation of the property as credible, the trial court determined the value of HERCO's property to be approximately $45,200,000.00. The Board appeals.[3]

Section 402 of the GCAL, relating to valuation of property, provides in pertinent part:

It shall be the duty of the several elected and appointed assessors ... to rate and value all objects of taxation, whether for county, city, township, town, school, institution district, poor or borough purposes, according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell. In arriving at actual value the county may utilize either the current market value or it may adopt a base year market value.... In arriving at the actual value, all three

methods, namely, cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), comparable sales and income approaches, must be considered in conjunction with one another.

72 P.S. § 5020–402(a).[4]

## I.

■ The Board's first argument is that the trial court erred in rejecting Langendijk's income approach to valuation insomuch as it is the most appropriate methodology for the appraisal of real estate that is owned, bought and sold by investors based upon its ability to produce income. The Board asserts that in the present case, where both appraisers concluded that the highest and best use of the subject real estate was its continuation as an amusement facility, the income approach was the best method to determine actual value.

■ "In tax assessment appeals, actual value or fair market value is determined by competent witnesses testifying as to the property's worth in the market; i.e., the price a willing buyer would pay a willing seller, considering the uses to which the property is adapted and might reasonably be adapted." *In re PP&L, Inc.*, 838 A.2d 1, 9 (Pa.Cmwlth.2003). "The trial court has the discretion to decide which of the methods of valuation is the most appropriate and applicable to the given property." *Id.* at 10. "The trial court's findings are entitled to great deference, and its decision

3. "Our review in a tax assessment appeal is narrow such that the trial court's valuation will be affirmed unless its findings are not supported by substantial evidence or it abused its discretion or committed an error of law." *Willow Valley Manor, Inc. v. Lancaster County Bd. of Assessment Appeals*, 810 A.2d 720, 724 (Pa.Cmwlth.2002).

4. With regard to counties of the third class, *see also* Section 7(d) of the Act of June 26, 1931, P.L. 1379, 72 P.S. § 5348(d) (in arriving at actual value for purposes of revision of assessments, all three methods, i.e., cost, comparable sales and income approaches, must be considered in conjunction with one another).

will not be disturbed absent clear error." *Id.*

▮ In support of its use of the income approach, the Board cites *In re Appeal of V.V.P. P'ship,* 167 Pa.Cmwlth. 282, 647 A.2d 990 (1994). In *V.V.P.,* we noted that "[t]he income approach calculates the value of income-producing property by capitalizing the *property's* annual net income." *Id.* at 991, n. 1 (emphasis added). "Net income is derived by deducting the property's actual annual expenses from the year's gross income." *Id.*

In *V.V.P.,* the taxpayer operated a tennis, racquetball and squash facility located on a 1.78–acre lot in Springfield Township, Delaware County. The taxing authorities, relying on a combined income and sales comparison approach, appraised the fair market value of the property at $800,000.00. The taxpayer, relying primarily on an income approach, valued the fair market value of the property between $330,000.00 and $420,000.00.

The court of common pleas in *V.V.P.* found the taxpayer's income approach, which determined that the business's operating expenses were 68.78% of gross income, to be more accurate than the taxing authorities' income-based valuation, which estimated that the business's operating expenses were only 15.05% of gross income. The court of common pleas further noted that the taxing authorities' comparable sales approach "was based on a comparison of four properties that were not located in Delaware County and were significantly larger than the subject property." *Id.* at 992. As a result, the court valued the property at $400,000.00.

In *V.V.P.,* we determined that the income approach was "the most appropriate method for appraising a property typically purchased as an investment, such as the tennis club, because such a property is valued by a purchaser for its ability to

produce income." *Id.* at 992–993. Furthermore, we recognized that the income figure used by the taxpayer's appraiser calculated the income derived from the rental of tennis, racquetball and squash courts minus actual expenses, i.e., income generated by rental of the property itself.

In rejecting the taxing authorities' argument that the taxpayer's income approach was essentially a "value-in-use" method like the one rejected in *F & M Schaeffer,* we noted that the taxpayer's appraiser's use of the income approach "did not place a value on the property significant only to the current owner, but that it valued the property to *any* owner, since the property would only be purchased for its ability to produce income." *Id.* at 993. We determined in *V.V.P.* that given the unique circumstances surrounding the property, including its limited capacity, nonconforming use status and its high risk as a potential investment, the trial court did not abuse its discretion in relying on the taxpayer's income approach to valuation.

The Board contends that the situation in *V.V.P.* is in many respects similar to the situation in the present case. We disagree. In *V.V.P.,* the taxpayer's income was generated as a result of patrons of the tennis club renting the tennis, racquetball and squash courts. Because the tennis club was not only located in a residential zoning district, but also failed to meet the applicable setback requirements, it existed as a nonconforming use. As a result, the trial court agreed with the taxpayer that the property had a very limited potential for other uses.

Here, Langendijk's valuation was based in part on revenue from admissions charged to enter the gates at Hersheypark and ZooAmerica, as well as revenue generated from the purchase of food, beverages and souvenirs such as "giant stuffed Her-

shey Kisses." *See* N.T. 02/24/04, p. 111; R.R. 205a. Clearly, such revenue is income generated by HERCO's business enterprises located on the property, not from the rental of the property itself. In addition, HERCO's property is much larger and located in a commercial recreation zoning district. As such, it is open to a wider range of uses than the property in *V.V.P.*

Hence, we believe that *V.V.P.* is factually distinguishable from the present case and that the trial court did not err in rejecting Langendijk's income-based valuation on the ground that it improperly relied on revenue generated by HERCO's amusement and entertainment businesses located on the property rather than the value of the property itself. In short, we agree with the trial court that Langendijk's valuation impermissibly relied on the "value-in-use" approach rejected by the Supreme Court in *F & M Schaeffer*.

## II.

The Board's second argument is that the trial court erred in rejecting Langendijk's income-based valuation based upon *F & M Schaeffer* because (1) the Pennsylvania legislature has specifically provided by statute that an income-based valuation is one of three acceptable methods for determining the actual value of real estate for tax assessment purposes and (2), *F & M Schaeffer* is a plurality opinion in which only one other Justice concurred with the authoring Justice, and that the Chief Justice and remaining three Justices concurred only in the result. Thus, the Board

contends that *F & M Schaeffer* cannot be relied upon as precedent.

In *F & M Schaeffer*, the Supreme Court recognized that pursuant to Section 402 of the GCAL, 72 P.S. § 5020–402, real estate must be assessed according to its actual value. " 'The actual or fair market value, while not easily ascertained, is fixed by the opinions of competent witnesses as to what the property is worth on the market at a fair sale.' " *F & M Schaeffer*, 530 Pa. at 457, 610 A.2d at 3 (quoting *Buhl Found. v. Bd. of Property Assessment*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962)).

In addition, the Supreme Court also rejected the argument that because the General Assembly included the cost valuation approach in tax assessment statutes, value-in-use was, therefore, a relevant consideration.[5] Specifically, the Court stated:

The courts below ignored the fact that real estate is still required to be assessed according to its fair market value, which by definition, precludes consideration of value-in-use. The mere fact that the legislature mandated consideration of all three approaches to valuation does not mean that value-in-use is now relevant in tax assessment cases. *The cost valuation approach must be employed in such a manner that a property's use and resulting value-in-use are not to be considered.*

*Id.* at 459, 610 A.2d at 4 (emphasis added). Thus, the Supreme Court held that "a property's use and its resulting value-in-use cannot be considered in assessing the fair market value of property for tax as-

---

5. "[V]alue or value-in-use represents the value to a specific user and, hence, does not represent fair market value." *F & M Schaeffer*, 530 Pa. at 457, 610 A.2d at 3. "Because value-in-use is based on the use of the property and the value of that use to the current user, it may result in a higher value than the value in the marketplace." *Id.* at 458, 610 A.2d at 4. "Value-in-use, therefore, is *not* a reflection of fair market value and is not relevant in tax assessment cases because only the fair market value (or value-in-exchange) is relevant in tax assessment cases." *Id.*

sessment purposes in Pennsylvania." *Id.* at 458, 610 A.2d at 4.

The *F & M Schaeffer* Court then determined that the cost valuation method used by the taxing authority in that case was improper because it was based on use and value-in-use. In particular, the Court stated:

> In their determination of fair market value, appellees' experts improperly utilized a replacement cost approach contingent upon the subject property's use as a brewery and the value of the property for that use (ie ... *the production of 3.5 million barrels of beer annually*)....
>
> . . . .
>
> The objective of a cost valuation approach is to estimate, as closely as possible, the cost to construct new the existing taxable real estate because that is, after all, the subject of the assessment— *not the production process or use of the property.*

*Id.* at 459–460, 610 A.2d at 4–5 (emphasis added).

Furthermore, although *F & M Schaeffer* is a plurality opinion, it has been followed by this Court in several instances. In *PP&L*, this Court affirmed a decision of a court of common pleas that rejected the possible use of an income-based valuation of one of PP&L's electric-generating facilities on the ground that there was no reasonable method of separating the portion of the income stream attributable to the taxable real estate from the income stream attributable to the business enterprise located on that real estate.

In *PP&L*, the taxing authorities raised arguments similar to those raised in the present case, i.e., that the income approach must be considered under Pennsylvania law, that it is the most appropriate method for appraising property typically purchased as an investment because such property is valued based on its ability to produce income and that *F & M Schaeffer* is distinguishable. In rejecting these arguments based upon *F & M Schaeffer,* we noted that the court of common pleas did not err in selecting an approach to valuation "which focuses on the tax parcels themselves, *as distinguished from the enterprise operating on the parcels,* from the "value-in-use" of the parcels ... and other intangible assets associated with the parcels." *PP&L,* 838 A.2d at 10–11 (emphasis added).

In addition, in *Allegheny Energy Supply Co. v. Greene County Bd. of Assessment Appeals,* 837 A.2d 665 (Pa.Cmwlth.2003), *appeal denied,* 578 Pa. 710, 853 A.2d 363 (2004), another case involving the valuation of a utility's power plant for tax assessment purposes, this Court affirmed a decision of the court of common pleas that refused to consider either the current use of the property as a power plant, or the value of the power plant to the current owner, on the ground that it was not relevant to a determination of the fair market value of the property. In affirming, we noted that the court of common pleas properly accepted the testimony of the taxpayer's expert, who viewed the property as an industrial use and excluded the value of the power plant's productivity.

As indicated by our decisions in *Allegheny Energy Supply Co.* and *PP&L,* this Court has applied the *F & M Schaeffer* rationale prohibiting the "value-in-use" approach in tax assessment cases and has previously rejected the same arguments raised by the Board in the present case. Therefore, we conclude that the trial court did not err or abuse its discretion in rejecting Langendijk's income-based valuation. *Id.*

### III.

The Board's third argument is that the trial court erred in rejecting Langendijk's

income approach to HERCO's property as a "special purpose" property where his valuation was developed in such a fashion as to (1) exclude the value of the business enterprise conducted on the real estate, (2) exclude the value of the personal property located upon the real estate and (3), arrive at a final opinion of value attributable solely to the real estate. In support of its position, the Board asserts that Langendijk determined the net operating income attributable to the business enterprises operating on the property and deducted the income attributable to the non-real estate components.

 In *F & M Schaeffer*, the Supreme Court rejected a use valuation method for "special purpose" properties. Specifically, the Court recognized that "valuation of property utilizing the 'special purpose' property principle amounts to valuation according to value-in-use, which we have held to be an improper consideration in property tax assessment cases." 530 Pa. at 461, 610 A.2d at 6. "Consideration of value-in-use is no more relevant under the guise of 'special purpose' property than it is for any other property." *Id.* at 461–462, 610 A.2d at 6. "It ·is an unacceptable consideration in property tax assessment cases under all circumstances." *Id.*

Despite the Board's assertions · to the contrary, our review of Langendijk's valuation indicates that it is directly based in part upon the income generated by admissions to Hersheypark and ZooAmerica, which are amusement and entertainment enterprises operated by HERCO on the property. Consequently, we reject the Board's assertion that Langendijk ade-

quately separated the income attributable to HERCO's business enterprises from the income attributable solely to the real estate.[6]

As a result, we agree with the trial court that Langendijk's income approach is impermissibly based upon the *productivity* of HERCO's business enterprises. Under Langendijk's approach, the value of the real estate would fluctuate from year to year based upon attendance and concession sales at ·Hersheypark and ZooAmerica.

 As discussed above, a valuation based in part upon the *productivity* of the business located on the real estate is an improper valuation based upon "value-in-use." *F & M Schaeffer; Allegheny Energy Supply Co; PP&L.* We believe that the record in the present case supports the trial court's determination that Langendijk's income-based valuation is improperly based on such a "value-in-use" approach. Therefore, we conclude that the trial court did not err or abuse its discretion in rejecting Langendijk's valuation on that basis. *Id.*

. Accordingly, we affirm.

### ORDER

AND NOW, this 18th day of May, 2005, the June 29, 2004 order of the Court of Common Pleas of Dauphin County is AFFIRMED.

---

**6.** We also note that Langendijk's valuation is based *solely* on the use of the property as an amusement park. Although both appraisers agreed that the property's highest and best use is as an amusement park, this is not the only commercial recreational use permitted

in Derry Township's CR zoning district. *See* Langendijk's Appraisal Report, Exhibit B–3; R.R. 574a. This "use" consideration is improper in itself. *F & M Schaeffer; Allegheny Energy Supply Co.*