**F&L Realty v. Lackawanna County Board of Assessment & Revision of Taxes**

C.P. of Lackawanna County, no. 03 CV 586.

*Joseph T. Wright Jr.* and *Raymond P. Pepe,* for appellants.

*Alfred K. Hettinger, Laurel Hettinger Fedak* and *Donald P. Dolan II,* for appellees.

*Matthew P. Barrett,* for respondent.

MINORA, *J.,* November 16, 2005—

## STATEMENT OF THE CASE

This action arises out of an appeal from the Lackawanna County Board of Assessment and Revision of Taxes. The appeal is from an assessment of property for the purpose of real estate taxation. The appellants seek redress and reduction of the assessment for tax years 2001-2002, 2002-2003 and thereafter. The Mid Valley School District, a separate party to this action, filed its own appeal wherein the Borough of Throop joined. The appeals of the taxpayers, school district and Borough of Throop have been consolidated under the above listed docket number 03 Civil 586 by order of this court dated June 7, 2004.

The appellants are F&L Realty Inc. and Keystone Company, which are taxpayers and property owners of 20 parcels of land located in the Boroughs of Throop and Dunmore in Lackawanna County, Pennsylvania.[1] These properties comprise the Keystone Sanitary Landfill and are the basis for the Tax Assessment Appeals filed by the Taxpayers, F&L Realty Inc. and Keystone Company. These same lands are also the basis for the appeals originally filed to 03 Civil 459 by the Mid Valley School District, later joined by the Borough of Throop. Significantly, the Borough of Dunmore and the Dunmore School District have not chosen to appeal.

The Keystone Sanitary Landfill Inc. is affiliated with the appellant taxpayers and operates a municipal waste facility upon the subject properties. The Department of Environmental Protection (DEP) has issued permits for solid waste management and granted approval for the operation of the landfill on the premises. On or about July 1, 2001, the Lackawanna County Tax Assessment Office assessed the value of the properties on the tax rolls for tax years beginning January 1, 2002, as $602,628.

On July 24, 2001, the Mid Valley School District, which is coterminous with the Borough of Throop, filed an assessment appeal in regard to 19 parcels[2] of land

---

1. County Tax assessment numbers: 12503020021, 12504020001, 1360-1030003, 13602010002, 1360202000201, 13604030001, 13703010002, 1360302000200, 13603020004, 1360401000100, 14701010001, 14701010002, 14701010003, 14701010005, 1470101000501, 14702010001, 14702010002, 14702010004, 14702010005 and 15708030028 (the properties).

2. All parcels listed in footnote 1 excluding parcel number 13601030003.

owned by the appellants and used as part of the Keystone Landfill. The Lackawanna County Board of Assessment and Revision of Taxes held a hearing on the school district's appeal on April 3, 2002. Subsequently, the board retained an independent appraiser, Vincent M. Dowling, MAI, SRPA of Dowling & Associates, to offer additional evidence verifying the value of the subject properties. The board conducted a hearing November 12, 2002, regarding the appraisal report of Vincent M. Dowling in which it concluded all the testimony and summary of findings. The County Assessment Office mailed the Final Assessment Notice on January 7, 2004, which comprised the following assessment information:

"2001-2002 tax year total assessed value for parcels in Throop Borough and Mid Valley School District and Dunmore Borough and School District equaled $4,077,502 and the total market value for 2001-2002 tax year equaled $19,500,000.

"2002-2003 tax year total assessed value for parcels in Throop Borough and Mid Valley School District and Dunmore Borough and School District equaled $3,800,003 and the total market value for the 2002-2003 tax year equaled $18,000,000."

The Mid Valley School District filed its appeal from the board's final determination to this court. By document dated February 6, 2003, the school district was joined by the Borough of Throop. The taxpayers, F&L Realty Inc. and Keystone Company, independently filed an appeal from the board's decision. The taxpayers dispute the board's determination in that it has over-assessed the subject property and improperly included the value of the permits to operate a landfill in its valuation. Tax-

payer alleges this value-in-use to be an improper and illegal form of real estate valuation for tax purposes.

*Description of Subject Property*

The property upon which the Keystone Landfill is situated covers a total of 858.22 acres. Approximately 1.89 acres is encumbered by slope easements held by the Pennsylvania Department of Transportation. The landfill is divided between two boroughs. Approximately 419.07 acres lies within the Borough of Throop coterminous with the Mid-Valley School District, and the remaining 439.15 acres lies within the Borough of Dunmore, coterminous with the Dunmore School District. Of the acreage situate in the Borough of Dunmore, nearly 105 acres are subject to closure requirements imposed by the Pennsylvania Department of Environmental Protection (while approximately 34 acres have been condemned by PennDOT). The landfill is further divided into five distinct disposal sites/areas. Of the five disposal sites, only one has full disposal capacity while two of the remaining four site capacities have been fully exhausted and are closed. One site is under construction and the only remaining site is undeveloped.[3] The property that is used for the landfill includes an office, scale house, truck wash facility, tire shredder, maintenance headquarters, a guardhouse, quarry scale house and radiation monitoring facilities. Additionally, upon the property that is the subject of the assessment appeal and located within the Borough of Throop are the gas transfer station, portions of

---

3. See taxpayers' brief in support of motion for judgment on the pleadings pages 7-8.

the comprehensive stormwater management system, the leachate treatment facility and a powerhouse.

## DISCUSSION

### *De Novo Review*

It is the duty of the trial court to review a tax assessment appeal de novo, without a jury, and to take into account all competent and credible evidence presented while determining the fair market value of the subject property. *Westinghouse Electric Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County,* 539 Pa. 453, 463, 652 A.2d 1306, 1311 (1995). De novo review of a matter demands complete "consideration of the case anew as if it was not heard before and no decision had been previously rendered." *Manor v. Department of Public Welfare,* 796 A.2d 1020, 1029 (Pa. Commw. 2002). Citing *Commonwealth v. Krut,* 311 Pa. Super. 64, 457 A.2d 114 (1983). The court may not give deference to the findings made by a previous tribunal in regard to evidence or arguments received in a de novo proceeding. *Manor v. Department of Public Welfare,* 796 A.2d 1020, 1029 (Pa. Commw. 2002). Furthermore, proceedings that are before the trial court on appeal from the Board of Assessment are de novo except if the record below is complete and complies with local agency law. *School District of the City of Erie v. Hamot Medical Center,* 144 Pa. Commw. 668, 602 A.2d 407 (1992). Under the current circumstances of our case, an incomplete record exists from the tribunal below, therefore a de novo review or remand is necessary. 2 Pa.C.S. §754. In addition, "a trial court has the duty of receiving the record of proceedings below, if introduced into evidence,

together with any other evidence that is properly received, and then make its own findings of fact [and] conclusions of law. . . ." *Pennsylvania State Police, Bureau of Liquor Enforcement v. Kelly's Bar Inc.,* 536 Pa. 310, 314, 639 A.2d 440, 442 (1994).

Presently, the record before this court from below is incomplete. Consequently, before this court would be able to consider the substantive issues presented by the parties' motions specifically; the taxpayers' judgment on the pleadings, the school district's motion to strike the filing of the amended real estate tax assessment appeal, the motion to strike the motion for judgment on the pleadings, the motion to roll back depletion of subject property instituted without authority by the Assessment Office and the motion to consider Keystone's property as an integrated economic unit, a record needed to be developed then and still does now. Towards this end, the court then granted leave of court by order dated December 10, 2004, to the above parties to submit an agreed upon record of the proceedings before the Lackawanna County Board of Assessment and Revision of Taxes. This effort, which seemingly should have simplified the proceedings, has been an abject failure. Because of this failure, the court has now determined that a new hearing is necessary; therefore, all objections to the underlying record configuration have been rendered moot and are hereby denied. Tellingly, most of these mooted objections dealt with the Board of Assessment allegedly improperly considering value-in-use testimony in its valuation. We shall deal with this issue later.

The pivotal concern before this court is the tax assessment appeal, and since we still lack a complete agreed upon record from the proceedings below, a hearing de novo

or a remand is required. Further, there has again arisen the same spirited dispute over the type of expert evidence that should have been considered below and should be allowed before this court. The Supreme Court of Pennsylvania states that procedurally, the taxing authority must first present the assessment record into evidence to make out a prima facie case establishing the legitimacy of the assessment. *The Deitch Company v. Board of Property Assessment, Appeals and Review of Allegheny County,* 417 Pa. 213, 221, 209 A.2d 397, 402 (1965); see also, *Green v. Schuylkill County Board of Assessment Appeals,* 565 Pa. 185, 772 A.2d 419 (2001). At that time, the burden shifts to the taxpayer to offer both credible and relevant evidence. *The Deitch Company, supra* at 221, 209 A.2d 397, 402. Once sufficient proof is presented by the taxpayer, it will defeat the prima facie significance of the board's assessment value, terminating its use as an evidentiary device and causing the assessment to lose any weight that it was previously given. *Id.* Yet, the taxpayer still remains obligated to persuade the court on the merits of the appeal. *Id.* at 222, 209 A.2d at 402. It is ultimately the duty of the trial court to independently make its own determination as to the fair market value of the subject parcel on the basis of competent, credible and relevant evidence presented by the parties in a tax assessment appeal. *Green v. Schuylkill County Board of Assessment Appeals,* 565 Pa. 185, 772 A.2d 419, 426 (2001). Therein lies the latest dispute. What type of expert evidence regarding valuation should be considered by the court as competent, credible and relevant?

Once all the evidence is submitted to the court, it must evaluate all the competent, credible and relevant evidence presented by the parties to determine fair market value.

In this evaluation, the court must consider the statute regarding the Third Class Counties and the General County Assessment Law which is set forth at 72 P.S. §5350(a) et seq. Accordingly, in an assessment appeal, the court shall determine the market value as of the date the appeal was filed and the market value for subsequent years if applicable. The court must also determine the common level ratio that was applicable when the appeal was first made to the board and the ratio applicable in consideration of each subsequent assessment year. See 72 P.S. §5350(a)(1) and (2). This determination by the court is not possible if insufficient evidence has been produced by the parties. Procedurally, once an assessment appeal has been filed to the court of common pleas, a de novo hearing or a remand is required to set the record for review or to complete the record from below which must be submitted to the court. This court has failed in its efforts to secure the complete record of proceedings before the Lackawanna County Board of Assessment and Revision of Taxes, including all reports and evidence. Further, it has failed in having the parties arrive at an agreed upon record from the proceedings below. Consequently, no hearing has yet been held nor has a complete record from below been established before this court. Nor does it appear, at this point, that such a record can ever be secured or agreed upon. Therefore, this court concludes that a remand hearing will be required as the record from below is fragmented and reconstruction of the record cannot be agreed upon by the parties.

### The De Novo Evidence Dispute

Although it is clear that the Rules of Civil Procedure do not govern statutory appeals such as this tax assess-

ment appeal case, *In re Appeal of the Borough of Churchill,* 525 Pa. 80, 83, 575 A.2d 550, 551 (1990), taxpayer/appellant had filed a motion for judgment on the pleadings regarding the legal requirements for the preparation of appraisal reports. The review of this motion by the court will materially advance this cause of action and therefore, pursuant to the court's discretion as authorized in *Sherman v. Yoder,* 59 Pa. Commw. 430, 430 A.2d 347 (1981), we elect to dispose of this motion on its merits. It is essential to our de novo hearing as well as to a remand that the fact-finding tribunal be given the benefit of the necessary competent, credible and relevant evidence. This motion will help define that evidence. Since the Rules of Civil Procedure do not apply to statutory appeals, *Churchill, supra,* perhaps some other form for submission should have been made seeking exclusively a specific type of expert testimony or prohibiting the alleged incorrect type of expert testimony. Arguably, such evidentiary motions are best used in a jury context. In any event, we deem it necessary to elevate substance over form and deal with the merits of this motion regardless of its title. The court is willing to look beyond the technical designation to see the filing for what the parties and the court understood it to be. *In re Appeal of the Borough of Churchill,* 525 Pa. 80, 90, 575 A.2d 550, 555 (1990). In dealing with this motion, we believe we will advance the case significantly by defining, up front, what competent, credible and relevant evidence may be legally received by the board on remand and by this court in a de novo proceeding.

Currently in Pennsylvania, there are three accepted methods of valuation which must be considered in con-

junction with one another. These include: (1) the cost (reproduction or replacement) approach; (2) the comparable sales approach; and (3) the income approach. 72 P.S. §5349(d). The actual value is the market value or fair market value which has been defined by the courts as "the price which a purchaser willing but not obliged to buy, would pay an owner willing but not obliged to sell, taking into consideration all issues to which a property is adapted and might in reason be applied." *F&M Shaffer Brewing Company v. Lehigh County Board of Appeals,* 530 Pa. 451, 457, 610 A.2d 1, 3 (1992). "The actual fair market value, while not easily ascertained, is fixed by the opinion of competent witnesses as to what the property is worth on the market at a fair sale." *Id.* On these matters, there is virtual agreement among the parties. Where the parties' disagreement blossoms is based upon what factors can legally be considered by expert witness in arriving at the "actual value thereof" per 72 P.S. §5020-402.

### The Value-in-Use Controversy

There exists a significant body of case law from 1992 to 2005 dealing with the issue of how actual value testimony should be received by a factual tribunal, be it the board or this court de novo. In defining this evidence for the board and for future court review, this court believes that it can materially advance the cause of action within a legally correct evidentiary framework.

As was stated in *F&M Schaeffer Brewing Company c/o Stroh Brewing Company, Appellant v. Lehigh County Board of Appeals and Lehigh County, Appellees,* 530 Pa. 451, 456-57, 610 A.2d 1, 3 (1990):

"Real estate is required to be assessed according to the 'actual value thereof.' 72 P.S. §5020-402. The legislature has mandated that, in determining actual value three approaches to valuation be used, namely (1) cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), (2) comparable sales and (3) income approaches, and all three must be considered in conjunction with one another. 72 P.S. §§5020-402, 5348(d). The term 'actual value' is defined as market value or fair market value, which in turn are defined as 'the price which a purchaser willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which a property is adapted and might in reason be applied.' "

The *F&M Schaeffer* case goes on to contrast the actual value, as defined above, as opposed to value-in-use, which it deems an improper valuation. *Id.* at 457, 610 A.2d at 3. Our Supreme Court stated, "In contrast, use value or value-in-use represents the value to a specific user and hence does not represent fair market value." (emphasis added)

It is axiomatic that actual value or fair market value can be an elusive concept that is not easily ascertained. Hence, there is a need for opinions by competent expert witnesses as to what the property should be worth on the market at a fair sale.

These same competent expert witnesses can distinguish between market value or value in a bargained for exchange and use value. *The Appraisal of Real Estate,* American Institute of Real Estate Appraisers (9th edition Chicago 1987) states that, strictly speaking, value-in-use does not fit the criteria discussed in the definition of market

value involving a willing buyer and a willing seller. They further state that value in use should *not* be considered equivalent to, or a substitution for, market value. *Industrial Real Estate, Society of Industrial Realtors,* 14th edition Washington, D.C. 1984. (emphasis added) *F&M Schaeffer, supra,* 530 Pa. at 457, 610 A.2d at 3-4.

The court in *F&M Schaeffer* goes on to note that, because value-in-use is based on the use of property and the value of that use to the current user, it may result in a higher value than value in the market place. They therefore determined such value-in-use evidence to be irrelevant in tax assessment cases. This is such because by statute only the fair market value or value in exchange is relevant in tax assessment cases as noted above.

The 1992 Pennsylvania Supreme Court continued its guidance to both litigants and fact-finders in *F&M Schaeffer, supra,* 530 Pa. at 459, 610 A.2d at 4, when the court stated, "The mere fact that the legislature mandated consideration of all three approaches to valuation does *not* mean that value-in-use is now relevant in tax assessment cases. The cost valuation approach must be employed in such a manner that a property's use and resulting value in use are *not* considered." (emphasis added)

To further clarify, the court went on to say that treating real property as "special purpose" property is an "unacceptable consideration" in property tax cases as it amounts to a guise for value-in-use. *Id.* at 461, 610 A.2d at 6.

There are certain taxation situations and eminent domain situations where a broader consideration of machinery, fixture and equipment is appropriate. However,

one must recall that it is real estate taxation at issue herein, and consideration of fixtures, machinery and equipment go inherently to the present use by the owner, and this can constitute improper value-in-use. *Jones and Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A.2d 856 (1961). Thus, in the context of real property tax assessment law, not only are machinery and equipment to be *excluded* from the value of the real estate, but they are *not* even to be considered in determining fair market value of industrial property for tax assessment purposes. *F&M Schaeffer, supra,* 530 Pa. at 462, 610 A.2d at 6. Once again, this rule would not apply in an eminent domain context as other statutory guidelines prevail.

In *F&M Shaeffer, supra,* they addressed the facility as a brewery in accordance with its use but contrary to statute. 72 P.S. §5020-201(a) specifically states that machinery and equipment, "*shall not* be considered or included as a part of the real estate. . . ." (emphasis added)

The mandatory "shall not" gives clear and unambiguous evidence of legislative intent and public policy. The policy is to promote a favorable business climate in our Commonwealth by promoting tax relief for industries in Pennsylvania. *F&M Schaeffer, supra,* 530 Pa. at 463, 610 A.2d at 6; op. cit. *Jones & Laughlin,* 405 Pa. at 429, 175 A.2d at 860.

The Supreme Court in reasoning stated that, "to give the exclusion proper effect, the assessed value of industrial real estate *must not, in any way,* reflect consideration of the value of the machinery and equipment." *F&M Schaeffer, supra,* 530 Pa. at 463, 610 A.2d at 7. Resultantly, the trial court was reversed in the case for considering equipment unique to brewing beer.

To assert a contrary position, Mid Valley and Throop would have us consider the case of *In re Appeal of V.V.P. Partnership v. Board of Assessment of Delaware County,* 167 Pa. Commw. 282, 647 A.2d 990 (1994). This case involved a tax assessment for a tennis, racquetball and squash facility which existed on a lot limited by both topography and two bordering highly traveled highways. To further complicate matters, the real estate was zoned RB Residential and the tennis courts here existed as a previously existing, non-conforming use. Finally, the property fails to conform with current setback requirements and therefore is non-conforming in that manner as well.

Under these unique facts and circumstances, the court accepted an expert's fair market value using the income approach and the sales comparison approach.

The case defines both approaches at *In re Appeal of V.V.P. Partnership, supra,* 167 Pa. Commw. at 285 n.1 and n.2, 647 A.2d at 911 n.1 and n.2. Essentially, the income approach capitalizes the property's annual net income (gross income less actual annual expenditures). The sales comparison approach compares the subject property to other similar properties that have been sold, giving consideration to certain variables.

The trial court found that, in this case, the income approach was a more accurate reflection of fair market value. The appeal challenged this income approach as a value-in-use measure of value that was contrary to *F&M Schaeffer, supra.*

The court distinguished *V.V.P. Partnership, supra* from other cases on its facts. They indicated that the income approach is the most appropriate method for appraising

a property typically purchased as an investment, such as a tennis club, because such a property derives its value to a potential purchaser by its ability to produce income. The expert used all the statutory approaches but concluded that he gave the most weight to the income in this case because it valued the real property to any owner since this type of property would only be procured for its ability to produce income.

In his testimony, the witness explained that business income is generally *not* an accepted measure of value. In this case, there were sound reasons for using it. The property was limited topographically by highways, by setbacks, by zoning, all of which severely limited it as an investment property. Further, the expert believed that as a sports facility, it was being managed at its "maximum possible efficiency." *Id.,* 167 Pa. Commw. at 287-88, 647 A.2d at 993.

Under these unique facts and circumstances, none of which apply herein, *V.V.P. Partnership, supra,* is not persuasive, not probative, and readily distinguishable on its facts.

Subsequent appellate court precedent bears this distinction out. *V.V.P.* has essentially been treated as a unique aberration restricted to its particular facts. In the case of *Westinghouse v. Board of Property Assessment Appeals and Review of Allegheny County,* 539 Pa, 453, 461, 652 A.2d 1306, 1310 (1995), our Supreme Court stated that, "Westinghouse's lead expert testified that he used the market approach, comparable sales approach and the income approach in arriving at his opinion of fair market value . . . . The taxing authorities' expert testified that he used the income approach, market approach and costs approach in arriving at fair market value."

Quite obviously, when arriving at fair market value, exclusive reliance upon the income approach or giving overall weight to the income approach did not prevail as in *V.V.P. Partnership, supra,* and using same as a precedent is unique and not readily analogous to other cases.

In another appellate case from the Commonwealth Court, the court confronted a specialized-use property much like the brewery in *F&M Schaeffer.* In *Allegheny Energy Supply Company v. County of Greene,* 788 A.2d 1085 (Pa. Commw. 2001), the court was confronted with the issue of valuing a power plant that generated electrical power for ultimate distribution to customers. In this case, the trial court considered the cost, comparable sales and income methods of determining the actual value of the real estate and improvements. The court decided that the cost method would be the soundest in this case. Tellingly, the trial court also looked at the highest and best use being that of a power plant.

On appeal to the Commonwealth Court, a number of issues were presented, many of which were fact specific to these power plant premises however, issues arose herein that are relevant to the case before us.

Much as is the case herein, the school district in *Allegheny Energy* argued that when the trial court concluded that the highest and best use was as a power plant, and then disregarded highest and best use for valuation as general industrial use land, the trial court erred. The school district argued that cost approach requires that vacant land to be valued at its highest and best use. The Commonwealth Court disagreed and stated so at two different places in their opinion. In *Allegheny Energy,*

*supra,* 788 A.2d at 1091, the Commonwealth Court rejected the school district's position stating,

"Contrary to the school district's contentions, the cost approach does not require that the valuation of either the vacant land or the improvements be stated in terms of its highest and best use. A property's use and its resulting value-in-use *cannot* be considered in assessing the fair market value of property for tax assessment purposes in Pennsylvania." (emphasis added)

Later on in the same opinion, *id.,* 788 A.2d at 1092, the court restates this rule by writing, "We repeat, the value of the property for a specific use and the value of that use to the current owner are *not relevant* in determining fair market value." (emphasis added)

Even when the income approach was accepted in *V.V.P. Partnership, supra,* it was accepted because using that approach to that unique piece of realty best valued the property "to any owner." When you improperly adopt value-in-use methodologies, you no longer value realty for any owner but to a specific use and a specific type of owner and therein lies the statutory error.

A case similar to *Allegheny Energy, supra,* arose out of our neighboring County of Luzerne. In the case of *In re PP&L Inc. v. Luzerne County Board of Assessment Appeals,* 838 A.2d 1 (Pa. Commw. 2003), the Commonwealth Court reviewed Luzerne County's decision regarding the assessment of the Salem Township nuclear power plant. In that case, the learned Judge Michael Conahan rejected the income approach, and this was determined to be correct, not an error. Further, Commonwealth Court determined that the trial court properly applied the cost approach to the valuation of the prop-

erty and finally, that exclusion of machinery and equipment from the definition of taxable utility realty was proper.

There were sound rationales for the trial court's findings in this case. Regarding the trial court rejecting the income approach, the basis for that decision in *PP&L, supra,* also has applications in our case. The trial court in *PP&L, supra,* 838 A.2d at 9, under section A entitled "Income Approach," was cited by the Commonwealth Court. "The trial court determined that the income approach was not controlling because there is no reasonable way to separate the portion of the income stream attributable solely to the taxable realty from the income stream attributable to the business enterprise located on the tax parcels."

This concern, this inability to distinguish, caused the trial court to reject the income approach. Upon review, the Commonwealth Court determined that this was a valid concern and that the court rejecting the income approach was correct. Further, the Commonwealth Court referenced *V.V.P. Partnership, supra,* and determined that such an income approach, as used therein, is the most appropriate approach for appraising property typically purchased for investment, because such property is valued by its purchase for its ability to produce income. *PP&L, supra,* 838 A.2d at 9. In other words, there was an inability to separate the income from the business itself, from the income stream solely attributable to the taxable realty.

The court went on to conclude that "the trial court appropriately recognized the economic realty of business income and the problem of distinguishing it from

income generated by the property itself." *PP&L, supra,* 838 A.2d at 10.

Ultimately, it was determined that the trial court quite properly relied upon the cost approach to valuations because the other approaches were unreliable indications of market value.

Continuing the cost approach, the proper formula was outlined by the Commonwealth Court. The formula consists of, "(1) the estimated value of the land which is assumed to be vacant and available for its highest and best use, added to (2) the estimated reproduction cost of the facility less depreciation . . . The value of the property for a specific use and the value of that use to the current owner are *not relevant* in determining fair market value." *PP&L, supra,* 838 A.2d at 11. (emphasis added)

This logic follows *F&M Schaeffer, supra,* and *Allegheny Energy, supra,* which stand for the proposition that "it is *not error* to select an approach to valuation which focuses on the tax parcels themselves as distinguished from the enterprise operating on the parcels, from the 'value-in-use' of the parcels and from machinery, equipment and other intangible assets associated with the parcels." *PP&L, supra,* 838 A.2d at 10-11. (emphasis added)

Further, guidance tell us that the value of improvements should be reduced to reflect both functional obsolescence and economic obsolescence. Functional obsolescence reflects loss of value caused by over-capacity and inadequacy. Economic obsolescence reflects loss in value due to lack of economic demand. Both the concepts are discussed and accepted as *PP&L, supra,* at 11 n.12, n.13 and at 12 as well.

While this case also had specific utility statutes that dealt with and excluded machinery and equipment, guidance was also given in this area as well. Fixtures, items of machinery and equipment that may be affixed to the realty, do not necessarily dictate their inclusion as real estate. In *PP&L, supra,* the trial court used a multi-disciplinary four-part approach to determine how taxable machinery and equipment should be viewed. The learned Judge Michael Conahan combined engineering, accounting, legal and commonsense elements. The ultimate outcome from the four-part process was the court's determination of property commonly understood to be machinery and equipment.

The intervenors sought to add the value of expensive contested items *affixed to the land* to the equation, thereby increasing the assessment. These were items of great economic significance such as the reactor re-circulating system, residential heat removal system, reactor building, closed cooling water system, turbine condensers, etc. They argued that these improvements were affixed to the real estate and under the law of fixtures they must be included as improvements to real estate and excluded as machinery and equipment. The Commonwealth Court agreed with the trial court's process succinctly and told the intervenors "we disagree."

While basing their conclusions on utility-based statutes, Commonwealth Court's reasoning is purposeful and gives great guidance. "Utility realty includes land and items affixed to the land. In addition, utility realty excludes machinery and equipment. The definition of utility realty utilizes both concepts and neither one trumps the other." *PP&L, supra,* 838 A.2d at 14.

In affirming the trial court's methodology and process, the Commonwealth Court found that the trial court's analysis was consistent with the law insofar as it considered both whether an item was affixed to the land and whether an item was machinery and equipment.

A most recent pronouncement of the Commonwealth Court provides us with perhaps the most eloquent view of the thinking of our appeals courts. In the case of *Hershey Entertainment and Resorts Company v. Dauphin County Board of Assessment Appeals,* 874 A.2d 702 (Pa. Commw. 2005), hereinafter referred to as *HERCO,* which was decided on May 18, 2005, the Commonwealth Court was confronted with a taxpayer, Hershey, seeking to sustain a trial court's findings and the board appealing the trial court's findings.

The Commonwealth Court reviewed the Board of Assessment's use of the income approach to valuation and concluded that the income approach amounted to an impermissible value-in-use methodology. The board was criticized for considering revenue generated by the productivity of the business from admissions, concession and souvenirs. Using the board's approach, the Commonwealth Court cautioned the value of real estate would have fluctuated year to year based upon attendance and concession and souvenir sales. Quite obviously, this is unacceptable when assessing real estate valuations.

The trial court that reversed the board was similarly critical of the board's value-in-use approach. In *HERCO, supra,* 874 A.2d at 705, the trial court was quoted and supported on the illegality of value-in-use methodology. The trial court stated,

" 'Use value' or 'value-in-use' is a concept derived from the particular property and the value of that use to

its current user, which may fluctuate based upon both management and administration of the property and other external conditions. . . . the use of the specific income of a specific user of a property is a value-in-use concept which is simply not permissible as a reflection of fair market value in any tax assessment case regardless of which of the three approaches is used. The board's expert's testimony starts with, and is based upon, the number of turns of the turnstile as patrons enter the amusement park . . . a starting point no different from that which was rejected in *F&M Schaeffer Brewing Company* where the appraiser began his analysis by determining the number of barrels of beer produced . . . ."

The trial court was sustained for both overruling the Dauphin County Board of Assessment for this value-in-use error and its rejection of the income approach witness at trial level. The line of reasoning has become consistent, be it beer barrels, turnstiles and concessions, or kilowatts of electricity in *Allegheny Energy, supra,* and *PP&L, supra.* As was correctly noted by the trial judge in *PP&L, supra,* where it is difficult to differentiate income from the realty and that from machinery and equipment, one of the other methods of valuation may be more probative. Perhaps the same may be said of tons of trash or cubic yards of landfill space representing value-in-use for our present parcel.

In *HERCO, supra,* the appeals court cited the trial court favorably for its observations of income-based valuation. Income-based valuation was cited as usually preferable in cases involving rental properties such as apartments, office space and shopping centers. You calculate avail-

able square footage, which has a potential for producing rental income by the act of renting it. *HERCO, supra,* 874 A.2d at 705-706.

Section 402 of the GCAL provides that valuation be in accordance with "actual value thereof," and in arriving at this figure, there are the three methods of cost, comparable sales and income approaches that must all be used and considered in conjunction with one another. 72 P.S. §5020-402. Despite this, the trial court maintains the discretion to consider all the testimony and then determine which testimony to be competent, credible and relevant. Once again, we are now reminded that value-in-use is irrelevant in *HERCO, supra.*

Further, whatever valuation method is used it must not value the property in a manner significant only to the current owner, or one owner, but it must value the property in a manner significant to any owner, *any* willing buyer and *any* willing seller. *HERCO, supra,* 874 A.2d at 707.

Clearly, using revenue generated by the business enterprises located on the property and not from the rental of the property itself is improper, *HERCO, supra,* 874 A.2d at 708, as this represents a value-in-use. If one employs the cost valuation approach, it must be used in such a fashion that the property's use and resulting value-in-use are *not* considered. *HERCO, supra,* 874 A.2d at 708. Ultimately, the key distinction in all these cases seems to be the value of the parcels or the real property itself, and not the revenue generated by any business entity that may exist upon that parcel or realty. *PP&L, supra,* 838 A.2d at 10-11; *HERCO, supra,* 874 A.2d at 709.

## CONCLUSION

With this most recent of pronouncement in *HERCO, supra,* and as a result of our detailed analysis of the past precedent herein, this court concludes that taxpayer's motion for judgment for preparation of appraisal reports is granted. Further, this case is remanded to the Lackawanna County Board of Assessment and Revision of Taxes with explicit instructions to make a complete record suitable for trial court and appellate court review. It is further instructed that all experts from any party whatsoever are specifically precluded from presenting irrelevant value-in-use testimony using any legal methodology income, cost approach or comparable sales. Finally, this prohibition from using value-in-use would also apply to "special purposes" property evidence which is also irrelevant as essentially value-in-use concepts in disguise per *F&M Schaeffer, supra,* and *HERCO, supra,* 874 A.2d at 710.

An appropriate order follows.

## ORDER

And now, to wit, November 16, 2005:

(1) The taxpayer's motion for judgment on the pleadings regarding the legal requirements for the preparation of appraisal reports is hereby granted.

(2) Further, this case is remanded to the Lackawanna County Board of Assessment and Revision of Taxes with explicit direction and mandate to make a complete record capable of trial court and appellate court review, and further, that all experts from any party whatsoever are specifically precluded from presenting irrelevant value-in-

use testimony using any legal methodology, be it income, cost approach or comparable sales. It is so ordered.

(3) Finally, this prohibition of irrelevant value-in-use testimony also extends to "special purpose" property evidence which is also irrelevant as essentially value-in-use concepts in disguise per *F&M Schaeffer, supra,* and *HERCO, supra,* 874 A.2d at 710.

It is so ordered.

